## GOODYEAR TIRE & RUBBER CO., INC. ET AL. *v.* RAY-O-VAC COMPANY.

No. 262.   Argued February 2, 3, 1944.—Decided February 28, 1944.

*Messrs. William E. Chilton* and *Albert R. Golrick* for petitioners.

*Messrs. Bernard A. Schroeder* and *Gerhard A. Gesell,* with whom *Messrs. Russell Wiles* and *Charles J. Merriam* were on the brief, for respondent.

Mr. Justice Roberts delivered the opinion of the Court.

This case involves the validity and alleged infringement of the Anthony Patent No. 2,198,423, issued April 23, 1940. The District Court held the patent valid and infringed [1] and its judgment was affirmed by the Circuit Court of Appeals.[2]

The patent, a very narrow one in a crowded art, is for a leak-proof dry cell for a flashlight battery. The conventional dry cell embodies a cup-like zinc electrode acting as a container for a central carbon electrode, electrolyte, and depolarizing mix. The bottom enclosure is the terminal for one electrode, the top enclosure for the other. The electrolyte is a viscous liquid composed of ammonium chloride, zinc chloride, water and starch. Use of the battery causes erosion of the zinc and eventually the mixture leaks through the container. A short circuit, or long continuous use, causes the formation of solids as the zinc is eaten away. The resultant expansion of the cell contents, due to the weakness of the zinc walls, causes bulging, breaking, and seepage. The escaping liquid tends to injure the metal walls of the flashlight casing.

Dry cells have been used in flashlights for many years. The tendency of the cells to damage flashlight containers by leakage, bulging, and freezing in the container had long plagued the industry. So much so that most manufacturers attached warning notices to their flashlight batteries advising users not to allow them to remain in the flashlight for extended periods of non-use and to remove a cell promptly upon ascertaining that it was dead.

No patent in the prior art addressed itself to the problem of preventing both leakage and swelling in a dry cell. At the time of the Anthony application flashlight cells were commonly encased in a paper coating which might

---

[1] 45 F. Supp. 927.
[2] 136 F. 2d 159.

or might not be waterproofed, or in some other similar casing for purposes of insulation from the case. In the patent in suit Anthony calls attention to the existing difficulties and states that his invention is for an improved protective casing which will prevent fluids from leaking out of the cell and causing injury to the case or other dry cells within it. He also adverts to the tendency of the cells to swell after a certain time and associates this swelling with the leaking. He states that the object of his invention is to protect the side walls of the zinc cup by providing a strong metal sheath which will closely and rigidly confine the cell to a given length and diameter and, while providing such a sheath, to insulate it from both terminals so as to render unnecessary the use of an insulating cover or label to prevent the cell from short-circuiting by contact with the side walls of the case. To accomplish his objects Anthony used the ordinary type of dry cell having circuit terminals at opposite ends, one electrode being a cylindrical zinc cup, the other a centrally placed carbon electrode, in electrolyte and depolarizing mix, the bottom closure affording a terminal for one electrode and the top for the other. Around this conventional combination he placed an insulating material and an outside protecting metal sheath which would enclose the insulated side walls of the zinc cup and tightly embrace both upper and lower closures to prevent leakage.

The claims in suit are Nos. 1, 2, and 3. If 1 is good, 2 and 3 are also. We, therefore, quote 1:

"A leak-immunized flashlight dry-cell provided with circuit terminals at opposite ends, comprising: a hollow cylindrical zinc metal electrode containing electrolyte; a centrally disposed carbon electrode and depolarizing-mix in said electrolyte; a bottom closure for the cell affording a terminal for one of the electrodes; a top closure for the cell provided with a terminal for the other electrode,

electrically insulated from the first mentioned terminal; and a protecting sheet-metal sheath insulated from both of said electrodes and enclosing the side walls of said metal electrode and tightly embracing said closures so as to prevent leakage of the electrolyte from the unit."

The District Judge made findings, which have support in the evidence, to the following effect: That the problem presented was old and no solution was attained prior to Anthony's invention; that the respondent began marketing the patented cell in 1939 and was the first to guarantee its product against sticking in the flashlight case; that the cell met with immediate commercial success due to the advantages of its construction and not to extensive advertising; that its advantages were recognized by the Army and other governmental agencies and were demonstrated by reliable tests. In his opinion he examined the prior art and showed that none of the workers in the art had met the problems of leakage and swelling in the way suggested by Anthony and that most of the cited patents had not in fact been addressed to these problems.

With respect to the charge of infringement, the court found, on sufficient evidence: That the petitioners consciously copied the respondent's commercial cell, which was made in accordance with the claims of the patent; that the petitioners' cell infringed the claims in suit, since the petitioners' substitutions of structure and material were no more than the choice of mechanical alternatives and did not avoid the practice of the principle disclosed by the patent.

The Circuit Court of Appeals reexamined the findings in the light of the evidence and accepted them. It must be a strong case in which this court will set aside these concurrent findings of two courts.[3] We think this is not such a case.

---

[3] *Williams Mfg. Co.* v. *United Shoe Machinery Corp.*, 316 U. S. 364, 367.

Viewed after the event, the means Anthony adopted seem simple and such as should have been obvious to those who worked in the field, but this is not enough to negative invention.[4]   During a period of half a century, in which the use of flashlight batteries increased enormously, and the manufacturers of flashlight cells were conscious of the defects in them, no one devised a method of curing such defects.   Once the method was discovered it commended itself to the public as evidenced by marked commercial success.   These factors were entitled to weight in determining whether the improvement amounted to invention and should, in a close case, tip the scales in favor of patentability.[5]   Accepting, as we do, the findings below, we hold the patent valid and infringed.

The petitioners renew here contentions, based on asserted insufficiency of description of the invention and on alleged file-wrapper estoppel, which the courts below overruled.   We have considered these defenses but conclude that the proofs do not sustain them.

*Decree affirmed.*

Mr. Justice Black, dissenting:

Those who strive to produce and distribute goods in a system of free competitive enterprise should not be handicapped by patents based on a "shadow of a shade of an idea."   *Atlantic Works* v. *Brady,* 107 U. S. 192, 200.   The practice of granting patents for microscopic structural or

---

[4] *Loom Company* v. *Higgins,* 105 U. S. 580, 589, 591; *The Barbed Wire Patent,* 143 U. S. 275, 277, 283; *Krementz* v. *S. Cottle Co.,* 148 U. S. 556; *Expanded Metal Co.* v. *Bradford,* 214 U. S. 366, 381; *Diamond Rubber Co.* v. *Consolidated Tire Co.,* 220 U. S. 428, 434–435.

[5] *Smith* v. *Goodyear Dental Vulcanite Co.,* 93 U. S. 486, 495–6; *Magowan* v. *New York Belting Co.,* 141 U. S. 332, 343; *Topliff* v. *Topliff,* 145 U. S. 156, 163, 164; *Keystone Mfg. Co.* v. *Adams,* 151 U. S. 139, 143; *Potts* v. *Creager,* 155 U. S. 597, 609; *Minerals Separation, Ltd.* v. *Hyde,* 242 U. S. 261, 270; *Smith* v. *Snow,* 294 U. S. 1, 7, 14; *Paramount Publix Corp.* v. *Tri-Ergon Corp.,* 294 U. S. 464, 474.

mechanical improvements inevitably must reduce the United States Patent Office to a mass production factory for unearned special privileges which serve no purpose except unfairly to harass the honest pursuit of business. If the patentee here has "discovered" anything, it is that the creamy substance in a dry cell will not leak through a steel jacket which covers and is securely fastened to the ends of the cell. For that alleged discovery this patent is today upheld. I do not deny that someone, somewhere, sometime, made the discovery that liquids would not leak through leak-proof solids. My trouble is that, despite findings to the contrary,[1] I cannot agree that this patentee is that discoverer. My disagreement is not based solely on the narrow ground that the record shows previous patents have been issued to others who put jackets of metal and other substances around dry cells. Antiquarians tell us that the use of solid containers to hold liquids predated the dawn of written history. That the problem of the quality and strength of the walls of such containers was one to which ancient people turned their attention appears from the widespread currency at an early age of the maxim that "new wine should not be put in old bottles." It is impossible for me to believe that Congress intended to grant monopoly privileges to persons who do no more than apply knowledge which has for centuries been the universal possession of all the earth's people—even those of the most primitive civilizations.

Mr. Justice Douglas and Mr. Justice Murphy concur in this opinion.

Mr. Justice Jackson is of opinion the judgment below should be reversed for the reason that, invention being

---

[1] This Court in 1884 declared that "whether the thing patented amounts to a patentable invention" is a question of law to be decided by the courts. *Mahn* v. *Harwood,* 112 U. S. 354, 358. On numerous occasions both before and since that case, this Court has

doubtful, the Court of Appeals relied upon commercial success of the product without adequate findings or evidence as to whether such alleged success was due to the product or to the phenomenal increase in demand due to the war and to the advantages of marketing contracts with mail-order houses.

---

invalidated patents on the ground that the alleged discoveries failed to measure up to the legal standards for invention.   See cases collected United States Supreme Court Digest (West 1943), Patents, Vol. 11, Par. 16–74.