## REVERE CAMERA CO. v. EASTMAN KODAK CO.
### No. 45C1019.

District Court, N. D. Illinois, E. D.
March 27, 1947.

Zabel and Gritzbaugh, of Chicago, Ill., for plaintiff.

Pennie, Edmonds, Morton & Barrows, of New York City, and Williams, Bradbury & Hinkle, of Chicago, Ill., for defendant.

CAMPBELL, District Judge.

This is a suit for a declaratory judgment concerning the validity and infringement of two of the defendant's patents on a double 8 mm. magazine type motion picture camera. The plaintiff proposed to manufacture this type of camera and submitted two models to the defendant for an opinion as to infringement. The defendant was of the opinion that both models of the plaintiff's magazine camera infringed the defendant's patents, and offered to license the plaintiff on a royalty basis. The plaintiff thereupon brought this action for a judicial determination of the questions of validity and infringement of the patents, and for other relief. In its answer, the defendant counterclaimed for an injunction restraining the plaintiff from further infringement and for an accounting of profits and damages.

The Defendant's Patents.

The defendant maintains that the plaintiff's models infringe Patent No. 2,262,553, issued on November 11, 1941 to August Nagel, and Patent No. 2,262,570, issued on November 11, 1941 to Otto Wittel. The claims of both patents may be divided into camera claims, magazine claims, and combination camera and magazine claims. Claims 9, 10 and 11 of the Nagel patent, and claims 1, 3, 8, and 13 of the Wittel patent are camera claims.

The Nagel camera claims relate to the use of four protuberances, or studs, on the front wall of the camera's magazine chamber which project through holes in the front wall of the magazine and engage correspondingly-placed studs on the aperture plate which carries the film within the magazine. The aperture plate is pressed against the front wall of the magazine by springs. The net effect of the forward pressure exerted on the aperture plate by the springs and the rearward pressure exerted by the studs in the camera wall on the studs in the aperture plate is to fix the film-carrying aperture plate exactly in the focal plane of the camera lens. The claimed invention of the Nagel patent is this so-called floating gate construction. It differs from the fixed gate construction, in which the film gate is fixed to the magazine wall, in that the film gate is moved independently of the magazine by devices on the camera, and is accurately placed in the focal plane of the lens despite inaccuracies in the magazine case and without accurate positioning of the magazine in the camera.

The Wittel camera claims relate to a single unitary member which performs the two functions of centering the magazine aperture plate when the magazine is in the magazine chamber of the camera, and of rotating, i. e. opening and closing, the shutter in either the original or inverted position of the magazine. The film used in this type of camera has a double row of 8 mm. frames. Only one row is exposed at a time in the process of taking pictures. When the film has been run through the camera

once, the magazine is inverted and pictures are taken on the second row of frames. For this purpose, two apertures, or shutter openings, are provided. When rotated, the shutter covers or uncovers whichever of the openings the optical axis passes through, depending on which of the two positions the magazine occupies. The Wittel improvement lay in providing means for securing an accurate framing, or positioning of the aperture plate, in both the original and inverted positions of the magazine. It sought to accomplish this result by the use of a square rod which extends from the front end of the magazine wall with an extension on the other end of the rod accurately journaled in the aperture plate within the magazine at a point symmetrical with respect to the two apertures. The shutter is secured to this rod. The shutter operating member in the camera is exactly positioned at the corresponding point with respect to the optical axis of the lens system. The shutter operating member is thus used both to operate the shutter by turning the square rod, and to center the film gate with respect to the lens axis by closely engaging the rod. Use is also made of the spring pressure which fixes the gate against the front wall of the magazine to clamp the shutter and hold it in either the open or closed position against accidental movement.

It is especially necessary in the case of double 8 mm. cameras that the aperture through which the film is exposed be centered with respect to the optical axis of the lens, and that it be framed, i. e., held in proper relation to the claw that intermittently advances the film. These requirements are built into the spool type camera which has the film-handling parts, including the film gate so positioned with respect to the lens as to hold the film in focus, located on the camera itself. In the magazine type camera, the requirements of holding the film in focus and centering the portion that is being exposed cannot be met by structures on the camera because the film-handling parts are located within the magazine. The problem is to keep the magazine light-tight, yet to devise means to manipulate the aperture plate from the outside with such precision as to focus the film and accurately

to frame the apertures. At the same time, the improvements had to be susceptible of quantity production at a cost to meet the competition of spool type cameras. The defendant states that the Nagel improvements were able to secure precise focusing of the film in the magazine by making only one part, the aperture plate, with its four studs or protuberances, to precise dimensions. The other parts of the magazine can be cheaply made by punch press operations or similar methods without close tolerances. The squared shutter operating pin of the Wittel patent fixes the aperture plate against both horizontal and vertical displacement.

### The Plaintiff's Construction

The plaintiff maintains that the models which it submitted to the defendant (designated by the letters A and B) do not infringe these patents because of certain changes made in the focusing, magazine-centering, and shutter-operating members.

Both models of the Revere camera differ from the Eastman magazine camera in that they have a drawer into which the magazine is first inserted, the drawer then being slid into the body of the camera; in the Eastman camera, the magazine is placed directly in the magazine chamber of the camera. The plaintiff contends that Revere Camera A does not infringe the Wittel patent because the shutter-operating bushing does not alone locate the magazine with respect to the optical axis. In the Wittel construction the bushing is mounted on the wall of the camera so that it is fixed at all times with respect to the optical axis. In model A the bushing is on the movable front wall of the drawer which is not fixed with respect to the optical axis of the camera; the plaintiff asserts that the centering of the magazine is effected by inserting it into the drawer and moving the drawer into the camera until its position is fixed by the front and side walls of the camera. In model B, the drawer and magazine are alleged to be centered by two projections fixed to the front wall of the camera which fit into correspondingly placed holes in the front wall of the drawer when the drawer is closed. It is likewise contended, as in the case of model A, that the magazine is not centered with respect to the optical

axis by the operating bushing, which, as in model A, is located on the front wall of the drawer. It is also claimed that model B avoids infringement of Wittel because in place of a unitary operating and centering bushing, this camera has separate members, one which operates the shutter and one which centers the drawer. (With reference to the latter bushing, plaintiff apparently means that it centers the magazine in the drawer, since plaintiff has already argued that, in the B camera, the drawer is centered by the two projections fixed to the front wall of the camera). These separate members are a front floating bushing into which the shutter shaft of the magazine fits and which centers the drawer, and a back operating bushing which does not center the magazine because it abuts against only two sides and is therefore free to move laterally.

The plaintiff further contends that the use of the drawer allows a different placement of the focusing pins and the shutter operator which avoids infringement of the Nagel patent. In model A, the four focusing pins are placed on the wall of the camera and the shutter operator is placed on the wall of the drawer. This arrangement is asserted to avoid infringement of Nagel claim 11 which calls for the placing of the magazine shutter operator and the four projections or focusing pins on the same wall. In model B, the four focusing pins are placed on the wall of the drawer instead of on the wall of the camera. Since the Nagel claims are restricted to placing the projections on the wall of the camera, the plaintiff asserts that infringement is thereby avoided.

## Infringement.

Patents would provide slight protection for patentees if the substance of a patent could be appropriated by making slight formal changes in the location of certain parts without essential change in function. The four focusing studs perform the same function whether mounted on the front wall of the drawer or on the front wall of the camera. In the latter case they project through holes in the front wall of the drawer. In both cases they engage correspondingly placed studs on the aperture plate in the magazine. When the drawer

is in position in the camera, the front wall of the drawer merely constitutes the "inner half" of the "wall" formed by the front walls of the drawer and the camera, so that the distinction between placing the focusing studs on the camera wall or on the drawer wall is so slight as not to avoid infringement. Likewise, infringement is not avoided by placing the shutter-operating bushing on the front wall of the drawer rather than on the wall of the camera, since the drawer, when inserted in the camera, is held in position by the front and side walls of the camera, and the front wall of the drawer is therefore fixed with respect to the optical axis of the camera, just as is the front wall of the camera on which the bushing is mounted by Eastman. Furthermore, since the drawer when closed, is fixed in position by the front and side walls of the camera, the addition of two projections fixed to the front wall of the camera which fit into corresponding holes in the front wall of the drawer does not seem to serve any function in centering the drawer, which is still fixed, as in the model A, by its position in the camera. For purposes of testing infringement, therefore, these projections may be ignored.

I am not persuaded by the plaintiff's argument that the shutter-operating bushing does not alone center the magazine with reference to the optical axis because the magazine is first inserted in the drawer which is then centered in the camera. The drawer is merely an additional container for the magazine, and is centered in the camera by the mere fact of being inserted in it. As shown by the defendant's construction, the magazine may be inserted directly in the body of the camera. The plaintiff cannot avoid infringement by adopting a construction which requires the use of the drawer. The important point is the method of centering the magazine aperture plate, regardless of whether the magazine is carried directly in the magazine chamber of the camera, or intermediately in the drawer. When the magazine is inserted in the drawer, in the Revere construction, the aperture plate is centered by the shutter shaft of the magazine which fits into the shutter-operating bushing on the front wall of the drawer. This is the same method of

centering as is used in the Wittel patent, except that the shutter-operating bushing is on the front wall of the camera in the defendant's construction. Again, as in the case of the other parts heretofore described, I do not think that the use of the drawer and the placement of certain parts on the front wall thereof instead of on the front wall of the camera are sufficient to insulate the plaintiff from infringement of the patents here in suit.

■ Finally, I do not think that the use of different bushings in the Revere model B camera for centering the aperture plate and operating the shutter avoids infringement of the Wittel patent for a unitary member which performs both functions. The plaintiff asserts that the use of separate parts for performing these functions is old in the art. But the plaintiff has not used two separate parts to perform these functions. It has obviously taken the Wittel construction and split it into two sections. One section has been made rectangular in cross-section instead of square as in the model A camera, so that it does not engage the shutter shaft firmly on all sides but abuts on only two sides, and therefore turns the shaft but does not center it. The other section has been made octagonal in shape so as to grip the shutter shaft securely. But this two-section construction necessarily operates as one part. When the shutter shaft or rod is rotated by the rectangular bushing to open or close the shutter, the octagonal bushing must turn with the shaft. Whether this centering and rotating member is made of one piece of metal or two should be immaterial, since the essence of the Wittel improvement is that the shutter shaft is both closely engaged to center the aperture plate in the magazine, and rotated to open and close the shutter. For the foregoing reasons, I find infringement of the above enumerated camera claims of the Nagel and Wittel patents here in suit by both models A and B of the Revere magazine camera.

### Patentability.

■ The devices disclosed by the aforementioned camera claims of the Nagel and Wittel patents do not, however, in my opinion, constitute patentable inventions. Nagel merely uses one set of protuberances, or studs, to engage a corresponding set of studs mounted on the aperture plate in order to hold the plate and the film carried by it, in a prescribed position with reference to the focal plane of the lens. The Wittel patent uses a rod attached to the aperture plate in the magazine, extending beyond the front wall of the magazine so that it may be inserted in a bushing in the front wall of the camera, with a shutter secured to the rod. The Nagel camera claims therefore pertain only to the symmetrical arrangement of protuberances on the front wall of the camera. The Wittel camera claims relate only to a bushing so located in the front wall of the camera that when the shaft, or rod, of the magazine is inserted, the magazine aperture plate is accurately located with respect to the optical axis of the lens system, and the shaft or rod is so engaged that it can be made to turn and thereby to rotate the shutter to cover or uncover the aperture on the magazine.

The use of protuberances to hold two members at a prescribed distance from each other, and the use of a bushing to locate and to rotate a rod hardly seem to be possessed of the dignity or genius of invention. These devices are the result of the application of mechanical ability and a knowledge of the laws of optics to the problem of the development of an 8 mm. reversible magazine motion picture camera by those skilled in the art.

The testimony of the defendant's witness Fairbanks, a camera design engineer who worked on the development of the defendant's 8 mm. magazine camera, reveals the gradual development of the camera through various stages of experiment. At the time it was determined to begin work on the development of this camera in 1933, the defendant was already producing or preparing to produce a double 8 mm. spool camera and a 16 mm. magazine camera. After an unsuccessful attempt to design an 8 mm. magazine camera in which the film moved continuously, Mr. Fairbanks started work on a camera with the standard intermittent film feed, the film being focused solely by the position of the magazine. This camera, like the 16 mm. camera, had a fixed gate

construction. But because of the smaller size of the 8 mm. frames, it was learned that more precise means were needed for focusing and framing than in the 16 mm. camera. Further work directed to this problem led to the development of the floating gate construction claimed in the Nagel patent in suit. The Wittel improvement was similarly directed to a related problem, the provision of means for securing an accurate framing in both the original and inverted positions of the magazine.

It is true that the simplicity of an improvement does not necessarily indicate lack of invention. The defendant cites Goodyear Tire & Rubber Co., Inc. v. Ray-O-Vac Co., 1944, 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721; Copeman Laboratories Co. v. General Plastics Corp. 7 Cir., 1945, 149. F.2d 962 and Delta Mfg. Co. v. E. L. Essley Machinery Co., 7 Cir., 1946, 153 F.2d 905 as cases in which simple ideas were held patentable. The common element in those cases is that the patented idea filled a need which had long been obvious. In such cases it is felt that although the idea appears simple, the fact that it did not occur to anyone else despite a long-standing and obvious need is sufficient to justify the award of patent protection to the inventor. In the case at bar there appears nothing parallel to the cases cited. Instead the evidence reveals a steady program of gradual improvement over approximately a five-year period, from the double 8 mm. spool camera, to the 16 mm. magazine camera, to the double 8 mm. magazine camera in suit, with the improvements here in issue nothing more than refinements in the art of focusing and framing the film in a reversible magazine camera. For the reasons already indicated, such refinements do not, in my opinion, under the present state of the law, constitute invention.

The remaining patent claims are magazine claims and combination camera and magazine claims. Because the plaintiff does not manufacture and does not intend to manufacture magazines, no justiciable controversy exists with reference to these claims. The complaint for a declaratory judgment as to these claims is therefore dismissed.

The plaintiff also asserted violation of the anti-trust laws, particularly the Clayton Act, 38 Stat. 730, by the notice on the carton in which the defendant's film (contained in a magazine) is sold, which is to the effect that the magazine is licensed for use only with the film sold in the magazine. The plaintiff argued that this notice illegally increases Eastman's monopoly in film through a restriction on the use of the magazine. (There is no issue of Eastman's attempting to create a camera monopoly by a limited license of the magazine and the film therein, since Eastman has admitted that the magazine and film may be used with any camera). The plaintiff does not intend to produce either magazines or film. It introduced no evidence at the trial that anyone else was restrained in his trade by this notice. For these reasons the portions of the complaint relating to alleged anti-trust violations were dismissed at the end of plaintiff's evidence on the trial.

Counsel for the plaintiff may prepare and file with the Court, in writing, within twenty days from the date hereof, proposed findings of fact, conclusions of law, and a draft of a proposed decree, consistent with the views herein expressed, delivering copies thereof to counsel for the defendant. Within twenty days of the receipt of such copies, counsel for the defendant may prepare and file with the Court, in writing, his observations with reference thereto and suggestions for the modification thereof, delivering a copy of such observations and suggestions to counsel for the plaintiff. Within ten days thereafter, counsel for the plaintiff may present to the Court, in writing, his reply to such observations and suggestions. Whereupon, the matter of making findings of fact, conclusions of law and a decree herein will be taken by the Court without further argument.