James F. McCASHEN, Plaintiff,

v.

Robert C. WATSON, Commissioner of Patents, Defendant.

Civ. A. No. 1241–53.

United States District Court
District of Columbia.

April 5, 1955.

B. D. Watts, of Richey, Watts, Edgerton & McNenny, Cleveland, Ohio, J. P. Wetherill, III, Washington, D. C., for plaintiff.

E. L. Reynolds, Sol., Washington, D. C., for defendant.

YOUNGDAHL, District Judge.

Plaintiff asks that this Court authorize the issuance of a patent under 35 U.S.C. § 145 to cover his allegedly new and useful wheat flour, the product of a unique method for making whole-wheat flour. The product is said to constitute a patentable invention in that it includes all the components of the wheat kernel, with

substantially all of the bran attached to the starch particles (the bran having rounded edges) and the major portion of the oil and starch cells being unbroken. Plaintiff's application for a patent, filed November 1, 1948, claimed and disclosed both a process for making whole-wheat flour and the flour product which resulted from this process. Claims to the process, numbered 14 to 17, involving a novel method of breaking grain by impact, were allowed. Claims to the product, numbered 1 to 9 and 11, were rejected both by the Examiner and the Board of Appeals of the Patent Office as lacking invention over prior art. These claims are now before the Court.

The Examiner rejected the claims (1 to 7) dealing with the comminuted wheat kernel when unmixed with other grain as differing, if at all, from prior patents designated as that of Miller, Morris Mills, or the reference of Melick,[1] in degree and not in kind. The finding was:

"The product has the same name, general appearance, qualities and utility as the reference products, each of which contains a substantial portion of the branny layers, vitamins and oil of the original berry. Each product is stated to be stable as regards rancidity, baking strength and insect infestation. There are found in the claimed product no characteristics of form, quality or properties which may be regarded as new, inventive and patentably distinctive from the articles of the prior art."[2]

The Examiner also rejected the claims (8, 9 and 11) involving a mixture of two cereal grains, a cereal and a legume, and a cereal and another baking ingredient, on the ground that the cereal product, not being patentable by itself, could not become patentable merely by admixture with any other ingredient customarily associated with cereals.

The Board of Appeals upheld the Examiner in rejecting the claims, finding that such prior references as Morris Mills indicated that constituents customarily rejected in ordinary milling processes are and can be retained in the flour; that the inclusion in plaintiff's product of such material as bran, which is excluded from the flour in most milling processes, does not amount to invention, nor does the fact that the bran retained is connected to the starch and cellulose of the wheat kernels. It likewise rejected the claims consisting of a mixture of two cereal grains (8, 9 and 11).[3]

Plaintiff here contends that he has produced for the first time a flour which contains the entire wheat kernel and therefore all the oil, vitamins and minerals contained therein, which is non-irritating to the mucous membranes of the alimentary tract, and which will keep for long periods of time without becoming rancid or infested with insects; that this new flour is a boon to the miller, baker and user—the miller being able to save money, since less of the wheat is lost in producing the flour—the baker being able to save money by buying in larger lots and making deliveries and pick-ups of unsold loaves less often—the user being able to get all the nutritious and health-giving ingredients of the entire wheat kernels, large parts of which currently go into cattle feed.

Plaintiff ascribes such beneficial effects to the fact that his flour differs from flour made by conventional methods in the form of its particles, in the connection of the bran and starch, and in the condition of the starch and oil relating to their cell structures. To reach this

1. These prior patents and references will be designated by their popular names.

The Miller patent of October 29, 1935, is numbered 2,018,966.

The Morris Mills patent of May 6, 1940, is numbered 110,532.

The Melick reference is that of an article appearing in The Reader's Digest of April, 1940, entitled "New Strength for the Staff of Life", written by Weldon Melick.

2. The Examiner's Statement, Appeal No. 29413, In re application of James F. McCashen, filed November 4, 1948, p. 7.

3. Opinion of the United States Patent Office Board of Appeals, Appeal No. 29413, filed December 12, 1952.

result, plaintiff insists extensive research, imagination and perseverance were required and employed, encompassing a sixteen-year period from 1938 to 1954.

The Patent Office holds to the theory that the only issue here involved is whether or not the product claims represent an inventive act distinct from that of the process by which the product was made. In this respect, the Patent Office asserts that plaintiff has failed to establish a patentable product in view of prior art which *discloses* (regardless of whether or not it operatively contains) flour having a high content of minerals, fat and vitamins due to the inclusion of the germ and/or endosperm. The germ and endosperm are alleged to be contained in the flour in such unbroken condition as to impede rancidity. The inclusion of bran, attached to the endosperm, is likewise alleged to have been disclosed. In short, the Patent Office contends that prior disclosures are sufficiently clear to make obvious the product for which plaintiff seeks a patent, so that as a matter of law, no patent should issue.

The statutory provisions involved read as follows:

"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvements thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." [4]

One of the statutory requirements is to the effect that:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patenta-

bility shall not be negatived by the manner in which the invention was made." [5]

This is a trial *de novo* in which the decision of the Patent Office is presumptively correct and entitled to great weight. Yet the evidence adduced here overcomes this presumption and convinces the Court that the finding of the Patent Office of no invention was not justified.

We have no difficulty in deciding that the product in question is new and useful. The evidence establishes that it contains substantially the entire wheat kernel with its three major parts, the germ, endosperm and bran; that inclusion of the bran is unique; that bran composes about 25% of the wheat and is high in vitamin and mineral content; that it was previously lost to human consumption because the sharp edges, which resulted from prior methods of processing wheat, were irritating to the mucous membranes of the alimentary tract; that plaintiff's flour does not become rancid for substantially longer periods of time than prior comparable flour; that bread made from such flour retains its moisture and edibility for about a week.

The form and quality of the ingredients in the flour are new (with essentially the same moisture content as is found in the original kernels of grain) having some of the particles consisting of bran and endosperm connected together (the bran having rounded, non-abrasive edges) containing a major part of the oily and starch material in substantially unbroken cells. It can thus be said that the flour does differ from flours made by conventional crushing operations in the form of its particles, in the connection of the bran and starch and in the condition of the starch and oil cells.

The record is replete with evidence demonstrating the great perseverance in research and practical application employed by the inventor in realizing this product.

4. 35 U.S.C. § 101.

5. 35 U.S.C. § 103.

There is no question but that plaintiff's flour is not identically disclosed or described in prior art. The controlling issue is whether the differences between the flour in question and prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to persons having ordinary skill in the art to which the subject matter pertains. Is the flour, as described by the claims, an obvious development in light of prior reference citations? We believe not.

Three references are principally involved: two patents designated as that of Miller and of Morris Mills and the Melick article in the Reader's Digest of April, 1940.

The Miller patent discloses a wheat flour which is not "like ordinary flours, and it is whiter, cleaner, freer from bran * * * ".[6] It indicates the desirability of removing bran, referring to this ingredient as an undesirable impurity.[7] While it recognizes that the bran, or husk, is a mineral-containing substance,[8] it does not disclose the need for, or the presence of bran in the flour, nor in what manner the vitamins, oils and minerals associated with the bran get into the flour. The Miller patent does not anticipate the unruptured starch cells disclosed in applicant's flour.

The Morris Mills patent teaches that the bran is removed and finds this a desirable result.[9] While we do not believe that either Miller or Morris Mills specify with clarity a flour containing the germ having unbroken cells, as does that of plaintiff, we assume, arguendo, that both these patents are anticipating in this respect.

On the basis of these disclosures,[10] the Court is satisfied that prior to plaintiff's flour, bran was removed because it irritated the alimentary tract; that this removal was responsible for loss of valuable vitamins and minerals; that synthetics employed to take their place were not wholly successful; and that plaintiff's product was the first successful, non-irritating wheat flour containing substantially all the wheat material, edible, with high nutritive value, and not tending to rancidity with the same rapidity as prior flour. We do not think the Board of Appeals correct in its determination that it was merely a matter of unpatentable permission to have the bran particles attached to the endosperm in the final product, for when the bran is broken loose from the endosperm, evidence establishes that the layers of bran become separated, are reduced to small, rough-edged flakes and are removed to avoid intestinal irritation. There is no doubt that such attachment could not be achieved under conventional milling procedure.

■■■ This case is controlled by the very recent and well-reasoned opinion of Chief Judge Laws in the case of Torok v. Watson[11] where it was stated, in accord with Congressional expression of the Constitutional provision, " * · * * to promote the Progress of Science and useful Arts * * * ",[12] that the Patent Statute:

" * * * should be construed in in the light of its purpose to promote the welfare of society by encouraging and stimulating discovery and invention. The requirement of invention should be examined in the

6. Miller patent, p. 3, col. 2, line 64.

7. Ibid. p. 1, col. 2, line 15; p. 3, col. 2, line 73.

8. Ibid. p. 1, col. 1, lines 17–18.

9. Morris Mills patent, col. 21, lines 1–12, table found at bottom of columns 31 and 32.

10. In this consideration we agree with the Board of Appeals that the "Melick article appears to be cumulative to these two patents and we do not find it necessary to separately discuss it."

The Department of Agriculture bulletin entitled "Graham Flour", issued April 12, 1913, does not constitute an anticipating disclosure. Suffice it to say this reference does not clearly disclose the condition of the bran, its physical characteristics and relationship to the starch, nor does it teach of the germ and starch having unruptured cells.

11. D.C., D.C.1954, 122 F.Supp. 788, 790.

12. U.S.Const., Art. I, Sec. 8, (8).

light of the contribution the product makes to the advancement of the arts and sciences. The statute itself makes no strict and narrow requirement of invention * * * ".[13]

In line with this test, accepted and applied in the Torok case and announced in O'Rourke Engineering Const. Co. v. Mc-Mullen,[14] we are firmly of the opinion that plaintiff's flour product has added something of value to the sum of human knowledge so that a return to prior art would be a retrogression; that the contribution is valuable to the health and economy of mankind, accomplishing a result never before attained; that it was brought about by great skill, keen perception and arduous research; that it differs from prior art in its form, properties, nutritive and economic qualities.[15] We are satisfied that to deny plaintiff a patent on the claims would operate to "discourage invention, stultify innovation and impede the progress of the art.[16] In short, the discovery as delineated and contained in plaintiff's claims does not appear to have been obvious from prior references,[17] and the product itself solves a problem long outstanding, and so advances the art.[18]

■ We come to this determination aware that the mere making of a product by a new process does not render the product patentable unless, standing alone, it is the result of invention.[19]

On the basis of all the evidence, we must conclude that the finding below of no invention was erroneous and unjustified. We therefore authorize the Commissioner of Patents to grant the patent sought, covering the claims in controversy.

Counsel will prepare an order consistent with these findings.

13. 122 F.Supp. 790–791.

14. 2 Cir., 1908, 160 F. 933, 938, certiorari denied 1909, 210 U.S. 435, 28 S.Ct. 763, 52 L.Ed. 1136.

15. We recognize that freedom from insect infestation is an attribute of the process rather than the product and is not mentioned in the claims. At the same time we see no merit in the assertion of the Patent Office that each of the claims had to disclose the fact that the flour contains all of the wheat kernel; that most of the starch cells are unruptured; that most of the oil cells are unruptured and that the bran is in such form that it is non-irritating, i. e., it has rounded edges or is attached to starch particles. It is without support in the pleadings or the evidence.

16. Torok v. Watson, D.C., 122 F.Supp. 791.

17. Based upon our understanding of the facts, the Application of Kebrich, 201 F. 2d 951, 40 C.C.P.A., Patents, 780, is not pertinent.

18. See Levin v. Coe, 1942, 76 U.S.App. D.C. 347, 132 F.2d 589, 596; Goodyear Tire & Rubber Co., Inc., v. Ray-O-Vac, 1944, 321 U.S. 275, 279, 64 S.Ct. 593, 88 L.Ed. 721; Atlantic Gulf & Pacific Co. v. Wood, 5 Cir., 1923, 288 F. 148, 154; Carnegie Steel Co. v. Cambria Iron Co., 1901, 185 U.S. 403, 406, 22 S.Ct. 698, 46 L.Ed. 968.

19. In re Smith, 1947, 162 F.2d 466, 34 C.C.P.A.,Patents, 1202.