Oswald M. KING, Plaintiff,

v.

ANTHONY POOLS, INC., a corporation, and Anthony Bros. Pools, Inc., a corporation, Defendants.

No. 1184–59.

United States District Court
S. D. California,
Central Division.

Feb. 19, 1962.

---

C. G. Stratton, Elwood S. Kendrick, by Elwood S. Kendrick, Los Angeles, Cal., for plaintiff.

Bernard Kriegel, Los Angeles, Cal., William Douglas Sellers, by William Douglas Sellers, Pasadena, Cal., for defendants.

YANKWICH, District Judge.

This patent infringement suit relates to a patent to Oswald M. King, U. S. Letters Patent No. 2,701,235, issued February 1, 1955. The device is described as an "operating system for swimming pools" and infringement is claimed as to Claims 5, 7, 8 and 9. Of these Claim 7 is the most comprehensive and was used during the trial as a means of testing both validity and infringement. It is printed in the margin.[1]

A review of the record, with the aid of a Transcript furnished to the Court, leads me to the conclusion that the patent and the claims in suit are valid and infringed. Infringement appears clearly from Exhibit 6, contrasting the patented and accused devices in the light of Claim 7.[2]

1. "7. Mechanism for skimming debris from the surface of water in a swimming pool comprising a pocket provided in a wall of the pool and having an upper opening communicating the pocket and the pool, a weir plate extending transversely across said opening in the pocket in an angular position directed toward the pocket to constitute a tilted barrier to flow between the pool and pocket, a pivot connecting the lower end of said weir plate to said wall and in the lower part of said opening, and a float carried by the upper free end of the weir plate and disposed in and buoyed by the water in the pocket to hold said position, said float, upon depletion of water in the pocket, falling further into the pocket accordingly to increase the tilt of the plate on its pivot and institute a cascade of water thereover from the pool to replenish the water in the depleted pocket."

2. See Plaintiff's EXHIBIT 6 which is here reproduced.

DEFENDANTS' STRUCTURE

PLAINTIFF'S EXHIBIT 6
CLAIM 7

Mechanism for skimming debris from the surface of water in a swimming pool comprising

(a) a pocket provided in a wall of the pool

(b) and having an upper opening communicating the pocket and the pool;

(c) a weir plate extending transversely across said opening in the pocket in an angular position directed toward the pocket to constitute a tilted barrier to flow between the pool and pocket,

(d) a pivot connecting the lower end of said weir plate to said wall and in the lower part of said opening,

(e) and a float carried by the upper free end of the weir plate and disposed in and buoyed by the water in the pocket to hold said position, said float upon depletion of water in the pocket, falling further into the pocket accordingly to increase the tilt of the plate on its pivot and institute a cascade of water thereover from the pool to replenish the water in the depleted pocket.

\* POSITION INDICATED PER EXHIBIT 7,
\*\* (Anthony's latest claim of location)

Feb. 1, 1955 O. M. KING 2,701,235
OPERATING SYSTEM FOR SKIMMING POOL
Filed Sept. 16, 1952 2 Sheets-Sheet 2

Fig. 2. Fig. 3.

OSWALD M. KING Inventor

Practically all the defenses allowed to be pleaded by Statute (35 U.S.C.A. §§ 102, 103) have been pleaded here: anticipation, prior invention, inadequacy of disclosure, non-patentability, file wrapper estoppel, claim of license, misuse of patent, abandonment, invention by another, laches by failure to prosecute infringement, and acquiescence in free manufacture by others. None of them is proved in the record. Four only require comment: (1) Invalidity by reason of disclosure in prior patents, publications and prior practices in the art, (2) misuse of the patent, (3) file wrapper estoppel, and (4) claimed license. We treat them in the order given.

1. The defense of anticipation by prior patents is based chiefly on three patents relating to dams and weirs for streams:

| | | | |
|---|---|---|---|
| Debarle | 464,350 | dated 12-1-91 | filed 8-12-91 |
| Pokorny | 829,172 | dated 8-21-06 | filed 3-30-04 |
| Savard | 968,082 | dated 8-23-10 | filed 11-8-09 |

To apply these patents relating to *streams and lakes* to the small compass of a swimming pool would call for a change in environment and a change in structure, as the defendants' expert, Robert H. Daugherty, readily admitted.

It is established law that adaptation of a device to a different field may amount to invention. (Potts v. Creager, 1895, 155 U.S. 597, 606–609, 15 S.Ct. 194, 39 L.Ed. 275) The means adopted may

"seem simple and such as should have been obvious to those who worked in the field, but this is not enough to negative invention." (Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 1944, 321 U.S. 275, 279, 64 S.Ct. 593, 594, 88 L.Ed. 721)

(And see, Pointer v. Six Wheel Corporation, 9 Cir., 1949, 177 F.2d 153, 160–161)

None of the three references were intended to operate by means of positioning the float in a pocket and moving the float up and down by means of withdrawing fluid from the pocket. They were large devices that were intended to be lifted and lowered by cables and winches as set forth in Debarle. Nor are there any means disclosed for raising and lowering the float to produce a skimming action. The pocket provided in the wall of a pool, which is the first essential element in Claim 7 in suit, was a stoppage place for the float. These and other differences make it necessary to reject the three best references relied on as anticipatory. Nor does the literature on the subject or the actual practice in the art disclose a device of the type patented. At best they disclose various attempts to construct skimming devices, all unsuccessful until the patented device came and conquered the field.

2. Much stress has been laid upon the fact that an agreement was entered into between the plaintiff and the owner of another patent for cross-licenses. It is claimed that this is an abuse of the patent right because it gives them a monopoly of the field through control of the two best devices on the market. Counsel for the defendants seem to have misconceived the purport of the doctrine of misuse of patent rights. What is condemned is agreements between owners of patents to limit cross-licenses to themselves and *not to license others*. (McCullough v. Kammerer Corp., 9 Cir., 1948, 166 F.2d 759, 760–762)

The pooling of patents and cross-licensing which are open equally to the public on the same terms do not fall within the interdiction. (Cutter Laboratories, Inc. v. Lyophile-Cryochem Corporation, 9 Cir., 1949, 179 F.2d 80, 92) Unlawful monopoly would arise only if the agreement were accompanied by the purpose or intent to exclude competition. (United States v. Griffith, 1948, 334 U.S. 100, 106–107, 68 S.Ct. 941, 92 L.Ed. 1236; Cutter Laboratories v. Lyophile-Cryochem Corporation, supra, 179 F.2d p. 93)

By offering licenses on a small fee basis per device manufactured *to anyone*, including the defendant,—an offer which is still kept open,—the plaintiff evidences an intent to come strictly within the teaching of cases such as Cutter and others. No monopolistic features exist here.

3. There is no merit to the contention that file wrapper estoppel exists. File wrapper estoppel arises only when, in order to secure a claim, the inventor accepts a narrow one and later tries to enlarge the scope of the claim to that which he had to abandon and did not get. (D & H Electric, Inc. v. M. Stephens Mfg. Co., 9 Cir., 1956, 233 F.2d 879, 882–884; Joyce, Inc. v. Solnit, D.C.Cal., 1939, 29 F.Supp. 787)

The alleged estoppel seems to relate to statements made by counsel for the applicant in the Patent Office in accepting a proposed change in certain phraseology. The change did not imply the abandonment of a claim which it is sought now to recapture.

4. Nor is there merit to the contention that the defendants have a license. The claim is based upon the fact that the plaintiff permitted a company of which he was an officer to manufacture the patented device without paying a royalty. There was no license and, assuming that there was, there was no right or promise to assign the license to others. Certainly by acquiring the assets of that company the defendants' predecessor *could not* acquire a license which the predecessor did not have and had no right to assign.

Without going into further details we state that we have considered the other defenses and find them equally untenable in law and fact.

Hence the following rulings:

Judgment will be for the plaintiff as prayed for in the complaint, finding validity, infringement and right to injunctive relief and damages.

The determination of damages is to be made by a Master to be appointed by the Court, after the interlocutory judgment shall have become final, unless the parties prior thereto agree upon a reasonable royalty.

Costs to the plaintiff.

Findings and interlocutory judgment to be prepared by counsel for the plaintiff under Local Rule 7, West's Ann. Code.