50 CCPA
### Application of Homer G. THOMSON.
### Patent Appeal No. 6914.

United States Court of Customs
and Patent Appeals.
April 25, 1963.

———◆———

Quarles, Herriott & Clemons, Milwaukee, Wis. (Arthur H. Seidel, Milwaukee, Wis., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

WORLEY, Chief Judge.

Appellant seeks reversal of the Board of Appeals' decision which affirmed the examiner's rejection of claims 1, 3 to 6, 9 and 12 of appellant's application[1] entitled "Composition Resistor With Embedded Terminal Lead Head" as unpatentable over the prior art. Two claims have been allowed.

The invention relates to molded composition electrical resistors of fixed resistance, comprising an elongated cylindrical body of molded thermosetting insulating material having minute conductive particles distributed therein to form a high resistance conducting path. Preferably, an outer portion of plain insulating material surrounds the portion forming the conducting path. Each end of the cylindrical body contains a terminal electrode consisting of a lead wire with an enlarged head. The latter is embedded in the resistor body and in contact with the portion forming the conducting path. The specification states that the principal object of the invention is to devise a more satisfactory terminal head, to overcome the disadvantages of the frusto-conically shaped head of the prior art. The latter is said to be particularly unsatisfactory in very small or miniaturized resistors.

Two head designs are disclosed. One construction consists of two enlarged annular portions separated by an annular groove extending completely around the head. The enlarged portion, extending farthest into the resistor body, has a smaller diameter than the outer enlarged portion, while the groove has about the same diameter as the lead wire. In his brief appellant refers to the head as being "dumbell" shaped. That is a fair description if we add that one side of the dumbbell is larger than the other. The second construction shown has a head having a frusto-conical shape, with the constricted or grooved portion defined by two transverse flat grooves on opposite sides of the head.

Claim 1 is representative:

"1. A molded composition fixed resistor, comprising an integral body, made of moldable insulating material; minute conductor particles distributed throughout at least

—————

1. Serial No. 720,845, filed March 12, 1958.

a portion of said insulating material to form a high-resistance conducting path therethrough; and at each end of said resistance path a terminal electrode, which comprises a lead-wire and an enlarged head, coaxial and integral therewith, the head being intimately embedded in the body in intimate conductive contact with the resistance path portion of said body; wherein each head comprises an inner enlarged portion, an outer enlarged portion, and a constricted portion between the two enlarged portions, the outer face of the outer enlarged portion being exposed through and flush with a face of the body and constituting an outwardly facing shoulder of the terminal electrode; all of the head inwardly from the exposed portion of the head being in intimate supporting contact with the body."

The examiner relied on the following references:

Bradley  1,835,267  December  8, 1931.
Steenweg  1,976,901  October  16, 1934.

As "background art" the board added:

Megow et al.  2,271,774  February  3, 1942.
Kohring  2,597,338  May  20, 1952.
Patla  2,698,372  December  28, 1954.

The Steenweg patent discloses cylindrical resistors mounted on spark plugs. The most pertinent part of that reference shows a resistor unit comprising a molded tubular resistance element with terminals which engage the element at each end, and are embedded in an insulating binding cement within the element. The portion of the terminal element projecting into the cement has an annular groove interposed between two enlarged portions of that element.

The Bradley patent was considered cumulative by the board. Since we shall not rely on it, it requires no discussion, nor does the Patla reference of which the board made no particular use.

Kohring discloses electrical resistors made of cylindrical ceramic shells having resistance cartridges inside. The resistance cartridge comprises a ceramic core on which there is a resistance element made of "spiral convolutions of hard carbon as cut in a coating formed in situ." The ends of the resistance element are connected at each end to metal terminals which are anchored in the cores. Various shapes for terminals are shown, including one defined by the patentee as having "transverse or circular fins." That element may be described as being dumbbell shaped.

The record before us includes three Megow et al. patents. Two are referred to in appellant's specification [2] as describing processes by which the resistors of the present invention, except for the head, may be made. The third patent was cited by the board as "background art." It discloses molded electrical resistors consisting of an insulating sleeve of thermosetting material, a conducting core made of conductor particles dispersed in a thermosetting binder, and wire terminals at each end. The terminals have a shank or lead wire portion and an integral, generally frusto-conical head. The latter is shown in the drawings to be embedded entirely in the conducting core portion of the resistor body, with the narrower outer portion of the head flush with the end of the molded cylinder body. The drawings also disclose that the shape of the head is not perfectly frusto-conical, but that it has a small concave depression extending completely around the head, into which the molten conducting material flows before setting.

The exact manner in which the references are relied on is somewhat obscured by the fact the board did not expressly combine them. The board gives the following résumé of the examiner's rejection:

"The Examiner has rejected the claims as unpatentable over either

2. U. S. Patent No. 2,261,916, issued Nov. 4, 1941, and U. S. Patent No. 2,302,564, issued Nov. 17, 1942.

Bradley or Steenweg. Although the Examiner has not given a detailed discussion of the references and the application thereof to the claims, it is evident that he considers the basic feature of the claimed resistor as anticipated by the resistors disclosed in the cited art."

In our opinion, that evaluation is most generous in view of the obvious shortcomings of the examiner's answer.

The board found the claimed resistors to be of the type shown by Megow et al., Kohring, and Patla, as well as the Megow et al. patents referred to in appellant's disclosure. It was of the opinion that the essence of the alleged novelty in the combination claimed is found solely in the shape of the enlarged head. Considering the Bradley reference to be cumulative, the board limited its discussion to the Steenweg patent, wherein it found the terminal element of a resistor unit having "a restricted portion interposed between two enlarged portions of the head embedded in the resistor composition," with the inner enlarged portion of the head smaller, and portions of the outer enlarged portion embedded in the molded material. The board concluded, "consideration of the background of the asserted invention and the improvement over the admitted state of the art leads us to the conclusion that the claims do not patentably differentiate over the art before us."

We agree with appellant that the issue is one of obviousness within the meaning of 35 U.S.C. § 103.

Appellant's specification states:

"In spite of the difference of the head * * * from the frusto-conical head of the prior art * * * the resistor of the present invention may be made by the process shown and described in Patent No. 2,302,-564 * * *. Or, if the entire body be made of resistor material, as suggested herein for extremely small resistors, the resistor may be made by the process shown and described in United States Patent No. 2,261,-916 * * *."

In view of that statement, as well as our evaluation of the three Megow patents, it is clear that the sole difference between the claimed resistors and the prior art lies in the particular shape and structure of the terminal head on the lead wires. The immediate question, therefore, becomes whether a terminal head such as claimed by appellant is disclosed in the prior art, and if so, whether its use in a resistor such as claimed is suggested by the prior art. We think both questions must be answered affirmatively.

The only limitation in claim 1 which is not taught by the Megow patents defines the head as comprising "an inner enlarged portion, an outer enlarged portion, and a constricted portion between the two enlarged portions," i. e. having the shape of an uneven sided dumbbell with the end having a smaller diameter extending inwardly into the body of the resistor. In our opinion, resistor terminal elements of the shape defined by claim 1 are clearly disclosed by Steenweg and also Kohring. That neither of those references discloses resistors *identical* to those of the Megow type we deem of little importance. What is significant is the teaching that in the electric resistor art, dumbbell shaped metal terminal members are conventional. Each reference also shows the end with the smaller diameter to be inward.

The use of dumbbell shaped terminal element being conventional in the art, we are faced with the question of whether use of the dumbbell shaped head on the Megow type resistor is fairly suggested by the references. We note that the frusto-conical heads shown in the drawings of the Megow patents are quite similar to the dumbbell shape, since the sides of the conical element, after being pressed into place, are shown to contain a circumferential concavity. That cavity appears to function similarly to the groove between the end portions of the claimed head in permitting the thermosetting core material to flow into it, which, after hardening, will tend to prevent axial movement of the terminal member. In

view of the similarity between the terminal heads in the Megow patents and the conventionality of dumbbell shaped heads in the art, use of the latter in the Megow type of resistor is considered an obvious choice of terminal head to one skilled in the art. It is apparent that the Megow type resistor modified as indicated meets every limitation set forth in the appealed claims.

Appellant argues primarily that with miniaturized resistors considerable difficulty was encountered in meeting certain exacting military specifications, and that their recognition of the problem existing with respect to the prior art, helically wound, frusto-conically shaped heads, coupled with a solution thereof, is deserving of patent protection. He specifically singles out as error the board's declaration that, since the claims are unlimited as to size, the disclosure affords no basis for an advantage over the prior art. Appellant urges that, since the exact dimensions are not critical, they do not belong in the claims but rather in a statement of the objects of the invention.

We do not agree with those contentions. The disclosure, as well as the brief, makes it abundantly clear that appellant's invention, if any, lies in *miniaturized* resistors. It is only with respect to them that appellant found peculiar problems, and it is only with respect to them that appellant may have discovered a solution. The claims, however, do not reflect either that invention or appellant's arguments. We are not here concerned with the merits of appellant's invention as it might appear in the disclosure, but are concerned with it only to the extent that the invention is defined in the claims.

Appellant's contention that the problems of miniaturization were not encountered or taught by the prior art is not relevant to the issue before us, since miniaturized resistors are not being claimed. A particular feature upon which an applicant predicates patentability must be recited in the claims; it is not sufficient merely to disclose it in

the specification, In re Lindberg, 194 F. 2d 732, 39 CCPA 866.

Appellant has not separately argued the patentability of claims 3, 4, 5, and 12 except for noting the additional limitations contained in each of these claims. We have considered them all and find they are disclosed by the prior art.

With respect to claim 6, wherein appellant defines the enlarged portions of the head as being "annular lands" and the constricted portion as being "annular grooves," we note that those limitations read on the aforementioned section of the Kohring patent.

The recitation in claim 9, that each head is a "columnar swaged head" has no patentable significance, since swaging the head is admitted by appellant to be old and therefore does not distinguish from the prior art.

The decision is affirmed.

Affirmed.

SMITH, Judge, with whom RICH, Judge, joins (dissenting).

The majority opinion is predicated upon what I consider to be an erroneous analysis of the invention claimed and an erroneous analysis of the prior art.

The invention disclosed and claimed may be fairly stated to be a resistor having a terminal head on the conductor leads so shaped that when it is molded in the high resistance conducting material forming the central body of the resistor, a satisfactory electrical and thermal contact is made and separation of the terminal head from the resistor material is largely eliminated when the resistor is subjected to external forces.

The majority opinion indicates that such features as appellant has disclosed would have an advantage only in the smaller sizes of resistors and properly points out that the rejected claims are not limited to such sizes. The majority does not consider appellant's statement in the specification that:

"The principal object of the present invention is to devise a more satisfactory head; not only to over-

come the disadvantages of the frusto-conical head in the very small sizes, *but also to have a better head in even the sizes in which the prior-art frusto-conical head is completely satisfactory.*" [Emphasis added.]

The majority correctly states that the board limited its discussion to the Steenweg reference, considering the Bradley reference to be cumulative. The majority, however, then quotes a portion from the board opinion which states the board's erroneous analysis and application of the disclosure of the Steenweg patent. The board stated that:

" * * * However, element 12 of Steenweg has *a restricted portion interposed between two enlarged portions of the head embedded in the resistor composition,* the inner enlarged portion of the head is smaller (note lines 96–98, page 2) and the portions of the enlarged head are embedded in the molded material. * * * " [Emphasis added.]

However, as correctly stated by the majority in describing this reference, Steenweg shows a "dumbbell" shaped terminal head associated with a molded tubular resistor element *with the inner enlarged portion of the head embedded in a binding material* which fills the core of the tubular resistor. Steenweg, therefore, while admittedly disclosing a terminal head similar to appellant's claimed terminal head, was not concerned with maintaining electrical or thermal contact between the resistor composition *per se* and the terminal heads through use of the "lop-sided dumbbell" shaped terminal head.

The majority states that the question to be determined is whether the use of the dumbbell shaped head on a "Megow type resistor is fairly suggested by the references" and answers the question affirmatively. I cannot agree. The majority first states that:

" * * * We note that the frusto-conical heads shown in the drawings of the Megow patents are quite similar to the dumbbell shape, since the sides of the conical element, after being pressed into place, are shown to contain a circumferential concavity. That cavity appears to function similarly to the groove between the end portions of the claimed head in permitting the thermosetting core material to flow into it, which, after hardening, will tend to prevent axial movement of the terminal member. In view of the similarity between the terminal heads in the Megow patents and the conventionality of dumbbell shaped heads in the art, use of the latter in the Megow type of resistor is considered an obvious choice of terminal head to one skilled in the art. * * * "

I do not agree that the "cavity" shown in the Megow patent functions similarly to the groove in appellant's claimed construction. Appellant states in his specification that the prior art terminal heads having a generally frusto-conical shape were unsatisfactory since they failed under "direct load".[1] The reason for the failure of these resistors is stated in the specification as follows:

"Also, because of the wedge-action of the frusto-cone, the direct-load test tends to cause cracks in the body. Contrast the inner enlarged portion 18 of head 17 of the present invention, which without appreciable wedge action, locks under that part of the body which protrudes into groove 22 of the head."

[1] This test is disclosed in the specification as follows:
"The military specification of the Department of the United States applicable to insulated fixed composition resistors, MIL–R–11B, prescribes the following two rigorous tests: "4. 6. 14. 1 *Direct Load.* Resistance shall be measured as specified in 4. 6. 2. Resistors shall then be held by one terminal, and the load shall be gradually applied in the direction of the longitudinal axis of the resistor until the applied load reaches 5 pounds. The 5-pound pull shall be applied for at least 5 seconds. (see 3. 17. 1.)"

Thus, it is clear to me that the "cavity" of Megow (if such a minute depression can be called a "cavity"), does not function in a way similar to the annular groove in appellant's terminal head. This is because the tapered frusto-conical head shown by Megow, despite the "cavity", still subjects the resistor body to the wedging action which appellant has stated to be the cause of failure of the prior art resistors under the direct load tests.

The Steenweg patent, as pointed out previously, does disclose a terminal head having a shape similar to appellant's claimed terminal head, but is embedded in a "binding cement" rather than in the resistor composition itself. Steenweg, through use of this "binding cement", was not faced with appellant's problem of providing a head having satisfactory thermal and electrical contact with the resistor composition itself and which also would provide a bond of sufficient strength to withstand the direct load test.

I cannot agree that it would have been obvious to one of ordinary skill in the art, at the time appellant made his invention, to substitute the terminal head of Steenweg in a molded resistor of the type shown by appellant. Had such a substitution been so obvious, it would seem that the problem faced by appellant would have been solved. However, as indicated by the affidavit of Zabel, the Allen-Bradley Company, assignee of the present application, has worked to solve these problems "for over the last ten years" and resistors embodying appellant's construction, which meet all military specifications, "are now being manufactured and sold in the regular order of business and have been favorably received by customers whereby these resistors have had and now enjoy a commercial success."

I have no doubt but that the applicant here is entitled to the claims on appeal. However, should any doubts exist as to the patentability of these claims, such doubts should be resolved in favor of the applicant since the affidavit clearly indicates that applicant's invention is the solution of a long existing problem and has met with commercial success. See Goodyear Tire & Rubber Co., Inc., et al. v. Ray-O-Vac Company, 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721.

For the foregoing reasons, I would reverse the decision of the board.