### RAY–O–VAC CO. v. GOODYEAR TIRE & RUBBER CO., Inc. (GENERAL DRY BATTERIES, Inc., Intervenor).

#### No. 8118.

Circuit Court of Appeals, Seventh Circuit.

June 5, 1943.

Wm. E. Chilton and Albert R. Golrick, both of Cleveland, Ohio (Fay, Golrick, Williams, Chilton & Isler, of Cleveland, Ohio, of counsel), for appellants.

Bernard A. Schroeder and Russell Wiles, both of Chicago, Ill. (Chritton, Wiles, Davies, Hirschl, Schroeder & Merriam, of Chicago, Ill., of counsel), for appellee.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

EVANS, Circuit Judge.

This appeal involves the validity and infringement of a patent to Anthony (assignor of plaintiff) issued April 23, 1940, No. 2,198,423, and covering a "Leakproof Dry Cell." The court found for the plaintiff on both issues, validity and infringement. From an injunctional decree, which also ordered an accounting, defendant prosecutes this appeal and renews the arguments made by it in the District Court in the hopeful belief that we will not agree with the conclusions which that court reached. While arguing both points, its most vigorous urge is directed to the defense of non-infringement.

■ The court found the patent to be valid and infringed. There was considerable oral testimony given as to the wide acceptance of the product immediately following its appearance on the market. The extent to which such acceptance was traceable to the patent and not to the advertising or other efforts of the plaintiff, was essentially a fact question, upon which the District Judge's findings are entitled to great weight. Moreover, the effect of such acceptance and the extent of the acceptance, in a doubtful case, is a factor at times well nigh decisive of the issue of validity. Such evidence bore directly upon the plaintiff's contention that the invention was not obvious. It was but an application of Justice Holmes' observation,—"The life of the law has not been logic; it has been experience." The acceptance of a new article of commerce is experience which may well outweigh any conclusion of the court or any syllogism which concludes,—there is nothing to that dry cell which any mechanic did not foresee. The public appraisal of a new article's worth, evidenced by its prompt acceptance, outweighs, in some cases, a volume of opinion evidence given by professional experts.

■ In other words, the issue as to whether the invention covered by the patent in suit represented a patentable advance in the art, was in part a strictly factual one, upon which oral evidence was received, and a finding thereon was made by the District Court. We accept the finding of the District Court on this, in part, factual issue of immediate and extensive use which followed the appearance of the patented dry cell.

With these observations little more need be said respecting the validity of this patent. It covered dry cells of the ordinary type used in flash lights. The novelty consisted of making a cell which was leakproof and swell proof, or more nearly so than those heretofore used.

It was widely recognized that leakage of corrosive or electrolyte from exhausted cells and damage to flash light casings from such leakage and the resulting swelling of the old cells have plagued those working in this industry from the time the first dry cell appeared.

Anthony's patent is devoted to the prevention of leakage in a cell and the swelling in dry cells. He claims to have accomplished this result "by providing a steel jacket for the side walls of the zinc cup, which grips the end closures with sufficient mechanical strength to withstand not only any gas pressure developed but also the mechanical pressure of expanding solids in the cell which form as the zinc is used up."

The trial judge, in commenting upon the evidence and the working of the structure, said: "There is no question under the evidence that the additional element overcame these two trouble makers or that Anthony by his combination solved the problem, not by preventing leakage ab-

solutely but by reducing it to such a minimum as to remove almost entirely the prevalent troubles."

While unprepared to say the "trouble makers" were overcome, we do say the evidence tends to establish the fact that the "trouble makers" were less troublesome in Anthony's cells than they were in the cells in common use before Anthony's invention.

■ We accept the District Court's conclusion that the claims in suit are valid. In reaching this conclusion our only doubt has arisen from the presence of such a multitude of inventions in so narrow a field. It is doubtful if any field of such narrow scope can be found where the inventive genius evidences such guinea pig prolificity.

In the brief period, 1935 to 1941, Anthony secured three patents on leakproof dry cells. Although counsel argue that he attained well nigh perfection in dry cells in the patent in suit, he secured a patent a year later dealing generally with the same subject matter. Notwithstanding this reflection on the asserted success and acceptance of its cell, we hold that the patent is valid.

■ *Infringement.* We think it fair to say that defendant's chief reliance is upon non-infringement. We set forth the exact language of claim.[1] Claims 2 and 3 provide for an additional element, to claim 1. If we conclude claim 1 is not infringed, it follows that claims 2 and 3 are likewise not infringed. Inasmuch as there is no contention over the added elements appearing in claims 2 and 3, it also follows that if infringement of claim 1 is shown, the finding of infringement of claims 2 and 3 is shown.

Non-infringement of claim 1 rests upon the asserted absence of element 5, to-wit, "a bottom closure for the cell affording a terminal for one of the electrodes."

The asserted difference between the two cells is in the bottom. Defendant contends that element 5 necessitates a separate and distinct bottom closure. The defendant's device, so it points out, has a heavier bottom wall, but not a separate one. Its bottom of the zinc cup is the same thickness as its walls and is made of steel. The precise question upon which infringement turns is whether element 5 calls for an extra or double bottom. Or, is infringement lacking if the "bottom closure" is formed integrally with the zinc electrode?

On this issue, the controversy becomes a narrow one and, we may add, also a close, a doubtful one.

Our final conclusion is that it would be adding modifying and restricting words, not justified by the language of the claim and the heart of this invention, to hold that this element 5 requires two bottoms or that the extra strengthened bottom of the defendant does not meet element 5, or that said element does not read upon the extra heavy bottom of defendant's structure.

The decree is affirmed.

---

[1] Claim 1 reads:
"A leak-immunized flashlight dry-cell provided with
"(1) circuit terminals
    (a) at opposite ends, comprising:
"(2) a hollow cylindrical zinc metal electrode containing electrolyte;
"(3) a centrally disposed carbon electrode and
"(4) depolarizing-mix in said electrolyte;
"(5) a bottom closure for the cell affording a terminal for one of the electrodes;

"(6) a top closure for the cell provided with a terminal for the other electrode,
    (a) electrically insulated from the first mentioned terminal; and
"(7) a protecting sheet-metal sheath insulated from both of said electrodes and
    (a) enclosing the side walls of said metal electrode and
    (b) tightly embracing said closures so as to prevent leakage of the electrolyte from the unit."