## The PALTIER CORPORATION, Plaintiff,

v.

## DANIELS–McCRAY LUMBER CO., Defendant.

Civ. A. No. 9637.

United States District Court
W. D. Missouri, W. D.

Sept. 17, 1957.

Morrison, Hecker, Buck, Cozad & Rogers, Kansas City, Mo. (Carlson, Pitzner, Hubbard & Wolfe, Chicago, Ill., with them on the brief), for plaintiff.

Fishburn & Gold, Kansas City, Mo., for defendant.

R. JASPER SMITH, District Judge.

This is an action for infringement of United States Letters Patent No. 2,621,-879, issued December 16, 1952, on application of Eugene T. Lundeen, and transferred by appropriate assignment to plaintiff. In this proceeding we refer to it as the Lundeen patent. By pre-trial order the issue of damages has been separated and held in abeyance until the questions of validity and infringement are completely determined. Jurisdiction is conceded.

Plaintiff is a manufacturer of materials storage equipment including "The Flexible Paltier," a pallet stacking structure claimed to be protected by the patent in suit. Defendant, in association with one Paul Darling of Kansas City, Missouri, manufactures and sells pallet stacking equipment which it is claimed infringes the patent in suit.

At this stage of the case two issues are presented: i. e., whether or not it required patentable invention to produce the structure of the patent in suit; and whether or not defendant has infringed. Manifestly, if patentable invention is not required to produce the device, the entire claim of plaintiff is terminated.

The patent in suit is entitled "Pallet Support," and "The present invention relates in general to multiple shelf or

platform structures which may be quickly assembled and disassembled, finding particular, but by no means exclusive utility in an arrangement for supporting and stacking a plurality of pallets or platforms such as those used in warehouses, supply depots, and similar places for storage or handling purposes."

The evidence indicates that the main purpose of a pallet structure is to make possible the efficient utilization of warehouse and other storage space by storing one commodity on top of the other and readily to separate those commodities, especially for commodities which will not support a load with their own weight and which by their nature must be easily removable. Thus in the field of materials handling, a pallet is a structure to permit storing of materials and allow the stacking of materials in vertical tiers. Pallets for storing and moving materials were first used some 37 years ago. Fork lift trucks for handling and stacking them have been available for about the same length of time. For maximum efficient use, the structure for stacking pallets is required to provide safety, speed of operation, flexibility and versatility to handle varieties of materials at low initial and operating cost, and to utilize to the maximum extent expensive warehouse space.

Pallets generally have a load-supporting platform usually referred to as a "deck" with spaces or runners underneath, so that trucks having a fork-member, usually referred to as "fork-lift trucks" with arms that are moved between the runners or through the spaces under the deck or pallet, may move or lift the loaded pallet, and stack several pallets in a tier.

The Lundeen device discloses and claims a pallet support which is combined with a load-supporting platform, and the structure is referred to as a "stacking pallet." This structure includes a load-supporting platform which may be a conventional wood pallet or of other material, which has attached to it substantially conical shaped members under each corner, with sleeves or openings through the platform and into the conical shaped member so that there may be inserted into the openings or sockets at the corners tubular posts extending upwardly, with receiving members having upwardly opening cone-shaped cavities attached to the top of the tubular posts to receive the cone members on the bottom of a platform stacked thereon. The cone members form male and female members with the sides substantially larger than the posts themselves, and the cone members nest and have coacting conical bearing surfaces. The cone structures provide self-centering in the stacking of the structures; the engagement of the cones resists relative lateral movement, and imparts lateral stability to the stacked structure. From time to time after sale of the patented structures was commenced various changes in manufacture method were initiated by plaintiff, but the basic method of operation and manufacture was continued.

The patented structure gives versatility, safety and speed of use, and combined with low cost and efficient use of storage space satisfactorily fulfills the requirements of the materials handling field for equipment of this type. The evidence shows that the structure is not only easy to assemble and disassemble, being held together merely by nesting of convex and concave members, but permits increased loads to be carried by the posts, at the same time absorbing shocks and side thrusts without damage to the parts or risk of toppling over.

Prior to 1948 there was not available any pallet stacking structure comparable to the patented structure. Industry resorted to haphazard and unsafe stacking methods, or to more expensive structures which lacked flexibility. This lack of pallet stacking structures capable of meeting the needs of the industry existed even though pallets and lift trucks for stacking them had been used for some twenty-eight years prior to the application for the patent in suit.

Defendant's device is substantially similar. It has a male cone member with

the base of the cone welded to a plate which is secured to the bottom of the pallet at the corners. A flat plate is secured to the top of the pallet at the corners, and the plates have holes aligning with holes in the pallet to receive tubular posts extending upwardly. A cone-shaped member having an upwardly opening conical recess is attached to the upper ends of the posts. The model in evidence shows that the recessed cone member (female) has an included angle between the inclined sides that is greater than the included angle of the male cone members, and it is this feature which furnishes a basis of defendant's claim of lack of infringement. Fundamentally, however, defendant predicates its defense on the premise that plaintiff's device shows lack of patentable invention.

Without in any way attempting to detail their exact nature as they appear in the patent, generally six claims are made for the patented device. Claim 1 calls for a pallet structure having separable bearing members with conical complementary bearing surfaces; claim 2 is directed to a pallet structure having posts with separable bearing members arranged relative thereto with the bearing surfaces complementary and outside of a plane perpendicular to the axis of the posts. Claims 3, 4, 5 and 6 are each directed to a pallet structure with posts and separable bearing members arranged relative thereto, the separable bearing members being substantially concave and convex and having complementary bearing surfaces specified in such a manner that there must be bearing engagement between the sides of the bearing members as distinguished from bearing engagement in a plane perpendicular to the axis of the posts.

The evidence shows that defendant's device meets the tests laid down by each of these claims.

In its efforts to show lack of patentable invention, defendant introduced some eighteen prior art patents, the structure of a bird bath, and evidence of a structure manufactured and sold by Mr. Darling consisting of a platform with sockets for receiving posts, to the tops of which had been welded flat plates which were used as supports for platforms stacked on top of them. None of them are particularly pertinent in this case, and do not, in my opinion, demonstrate that existing prior art destroys the element of invention. Rather, the array of patents offered by defendant as prior art attests that the prior art is as barren as the Patent Office itself found it to be, and evidences the continued efforts by those skilled in the art to produce a suitable pallet stacking structure. Defendant urges three prior art patents as being particularly pertinent. They are Gifford patent No. 1,-490,665, Vrabcak Patent No. 2,544,743, and British patent No. 188,785, for Silcock. Of these, the only one offering any similarity—a similarity which is not sufficient to overcome the presumption of validity existing for the patented structure—is the British Silcock patent, not referred to in the Patent Office file wrapper. This device in simple terms is described as a letter tray with attached corner posts, at the top of which is a tapered dowel-like male extension surrounded by a shoulder, with corresponding female recess at the bottom of the post, to permit stacking of similar trays in tiers, with some form of centering of the tiers resulting from the nesting of the dowel-like extensions, and with the bearing primarily on the shoulder. There is nothing in the claims, drawings or specifications which suggests in any fashion a device similar to plaintiff's, and there is no basis for the claim that plaintiff's device had its origin there. The same may be said for all the other prior art patents introduced in evidence.

We should not be deceived by the apparent simplicity of the patented structure. In some respects the apparent simplicity itself furnishes a strong argument for its patentability. Where, as here, for a period of some twenty-eight years a need has existed for such a structure, with numerous efforts to provide one by way of patented devices, the final

answer becomes "invention", and as such it is entitled to protection of the patent laws. From time to time we are warned against the "ex post facto wisdom of the bystander," and principal reliance should be placed on the history of the art. See Bresnick v. United States Vitamin Corporation, 2 Cir., 139 F.2d 239; Computing Scale Co. of America v. Automatic Scale Co., 204 U.S. 609, 616, 27 S.Ct. 307, 51 L.Ed. 645; Railroad Supply Co. v. Hart Steel Co., 7 Cir., 222 F. 261, 273; Florence-Mayo Nuway Co. v. Hardy, 4 Cir., 168 F.2d 778.

In the 28 years prior to Lundeen's application for patent, the art simply had not found a pallet stacking structure which met the requirements of the industry, even though pallets and lift trucks were used for that period of time. Thus, * * * "It may be safely said that if those skilled in the mechanical arts are working in a given field, and have failed, after repeated efforts, to discover a certain new and useful improvement, that he who first makes the discovery has done more than make the obvious improvement which would suggest itself to a mechanic skilled in the art, and is entitled to protection as an inventor." Expanded Metal Co. v. Bradford, 214 U.S. 366, 381, 29 S.Ct. 652, 656, 53 L.Ed. 1034.

■ And to a substantial degree we are justified in looking to the commercial history of the prior art and the patented structure, because it represents the judgment of industry in the field with which the invention deals. "The public appraisal of a new article's worth, evidenced by its prompt acceptance, outweighs, in some cases, a volume of opinion evidence given by professional experts." Ray-O-Vac Co. v. Goodyear Tire & Rubber Co., 7 Cir., 136 F.2d 159, 160, affirmed 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721. See also, Wahl Clipper Corp. v. Andis Clipper Co., 7 Cir., 66 F.2d 162, 165. The actual success of the patented device here is in evidence without serious contradiction; and there is no evidence of any commercial development of any of the prior art shown in evidence. Certainly in determining invention, the actual success of the patented device, the degree to which it is accepted by the purchasing public, and the advantages accruing from its use are to be taken into account.

Section 282 of Title 35 U.S.C.A., bolstered by many decisions of our courts imposes a heavy burden on a defendant who seeks to attack the validity of a patent. "A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it." See, also, Radio Corporation of America v. Radio Engineering Laboratories, Inc., 293 U.S. 1, 8, 54 S.Ct. 752, 78 L.Ed. 1453.

While it is undoubtedly true that this presumption is strengthened when the principal art relied upon has been considered and rejected by the Patent Office, and while the corollary is likewise true that the presumption is greatly weakened when the principal art apparently has not been considered by the Patent Office, we are not prepared to say that the presumption is destroyed by the simple act of introducing in evidence prior patents which in themselves are not persuasive of a demonstrated prior art.

■ Certainly proof of prior knowledge or use of a device or invention must be clear, satisfactory and persuasive, and we do not find it here. See Cherry-Burrell Corporation v. Dairy & Creamery Equipment Co., 8 Cir., 75 F.2d 60; Rousso v. New Ideal Laundry Co., D.C., 9 F.2d 1012.

■ To be patentable, a device must not only be new and useful, it must also be the product of true "invention". It must be beyond the reasonable expectation of persons of ordinary skill in the art, the routineers of the field. Under the record here, the Lundeen patent meets these requirements. See Thompson v. Boisselier, 114 U.S. 1, 5 S.Ct. 1042, 29 L.Ed. 76; Atlantic Works v. Brady, 107 U.S. 192, 2 S.Ct. 225, 27 L.Ed. 438;

Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corporation, 340 U.S. 147, 71 S.Ct. 127, 130, 95 L.Ed. 162.

We are not unmindful of the rule laid down by Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corporation, supra, requiring much more care in analysis of combination patents than was the practice some years ago. Quite properly, "courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements." But we can only conclude here that the Lundeen patent did fulfill the injunction in that case, that, "The function of a patent is to add to the sum of useful knowledge." None of the teachings of the prior art shown in evidence anticipate the elements of useful knowledge contained in the patent in suit. In this case, the exercise of invention was required, and skill above ordinary mechanical or engineering ability was clearly shown.

We conclude, therefore, that the Lundeen structure in suit is in fact a patentable device, and that defendant has failed to sustain the burden of persuasion imposed on it.

We now turn to the question of infringement by defendant:

Defendant is charged with infringement due to commercial or non-governmental sales, although the bulk of its sales have been to the United States Air Force. So far as this action is concerned, we are not interested in the sales to the United States, since provision is made otherwise for alleged infringements there. Section 1498, Title 28 U.S. C.A. We are justified, however, in examining the background of defendant's manufacturing history, as it may relate to the general question of infringement. Mr. Darling related the manner in which he and defendant first entered the stacking pallet field. In 1952 they received an invitation to bid on an Air Force Contract for stacking pallets which specified "Paltier No. 5 or equal." They were advised that plaintiff had them for sale.

Thereafter, they "found some" in an Air Force warehouse in Kansas City, Missouri, and took crude measurements. From that information hardware was manufactured and sold to the United States, and with slight later modifications was sold commercially.

Under these circumstances, we have no choice but to conclude that the accused device is the result of imitation of plaintiff's product, rather than experimentation, invention or knowledge of any prior art. See Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 612, 70 S.Ct. 854, 94 L.Ed. 1097.

As was suggested earlier, however, it is claimed that the recessed cone member on defendant's device, i. e., the female receiving cone, has an included angle between the inclined sides that is greater than the included angle of the male cone member, and that therefore defendant's structure has bearing surfaces only at the extreme upper end or edge of the receiving cone, in contact with the underside of the flat plate. This furnishes the basis of the claim that since plaintiff's claims call for bearing surfaces in more than one plane and that they must lie outside a single plane perpendicular to the column, defendant's structure cannot be considered to infringe.

The record does not support defendant's claims. The only direct evidence in the case is to the effect that defendant's structure does in fact have the bearing surfaces called for by the claims. There is argument to the contrary; but the only *evidence* is that in actual use under load, the bearing surfaces were multiple, and were in more than one plane, and outside a single plane perpendicular to the column.

More important however is the conclusion that defendant's structure operates in the same manner and produces identically the same results as the patented structure. Consequently, in actual reality, there was infringement. Many years ago, the Supreme Court held that, "if two devices do the same work in substantially the same way, and accomplish the same result, they are the same, even though they differ in name, form or

shape." Machine Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935.

Furthermore, we are unwilling to consider that on the face of this record, simply changing the included angle of one of the cones, either by inadvertence or design, so that the bearing surfaces were not identical with the bearing surfaces of the patented device would amount to a deviation from the patented device sufficient to constitute no infringement. "Though infringement [is] not literal, the changes [to] avoid literal infringement are colorable only." Graver Tank & Mfg. Co. v. Linde Air Products Co., supra [339 U.S. 605, 70 S.Ct. 858].

The patent is valid. It has been infringed by defendant. Plaintiff is entitled to judgment enjoining continued infringement. At the appropriate time evidence will be heard on damages suffered by plaintiff. Judgment will be entered accordingly. Plaintiff is given ten days within which to submit form of judgment entry.

To the extent that they are not incorporated in this memorandum, requested findings of fact and conclusions of law are denied.

It is so ordered.