John W. ENGLAND, Plaintiff,

v.

DEERE & COMPANY, Defendant.

Civ. A. No. P–1927.

United States District Court
S. D. Illinois, N. D.
March 28, 1960.

See also D.C., 158 F.Supp. 904.

**134**

Penrose L. Albright, Mason, Mason & Albright, Washington, D. C., for plaintiff.

Eugene R. Johnson, Miller, Westervelt & Johnson, Peoria, Ill., Brown, Jackson, Boettcher & Dienner (Arthur H. Boettcher and Cameron A. Whitsett), Chicago, Ill., for defendant.

MERCER, Chief Judge.

By his complaint herein, plaintiff, John W. England, alleges infringement by Deere & Company of Reissue Patent No. 23,927. Defendant filed its answer averring invalidity of the patent in suit and a counterclaim for declaratory judgment that said reissue patent is invalid. Upon issue thus joined, the cause was tried before this court without a jury.

Before entering upon a consideration of the evidence, disposition will be made of defendant's contention, based upon file wrapper references, that both the original England patent and the reissue patent in suit were improvidently issued by the Patent Examiner. Defendant argues that the file wrapper does not disclose adequate proof of invention over the prior art references which the Patent Examiner considered, and that this court must now conclude that there was no basis, initially, for issuance of the patent and that the same is invalid.

The defendant's argument appears to be a rather ingenious one. The patent in suit involves a three-finger twine holder for use on a twine-tie hay baler. Plaintiff's original application for a patent covering the device was denied by the Examiner upon his findings that the device was anticipated by, and did not constitute invention over, the teachings of British Patent No. 11,419, to Hornsby, et al. After certain minor amendments were made in the application, and after a conference between the Examiner and plaintiff's attorneys, the Examiner reversed his prior ruling of denial, and Patent No. 2,594,140, covering the device was issued to plaintiff on April 22, 1952. On January 18, 1955 the reissue patent in suit was issued to plaintiff. Defendant now contends that the file wrapper discloses no proof sufficient to overcome the Examiner's original decision denying the application.

That argument asks this court to invade a field into which it may not now inquire. The fact of issuance of the patent is prima facie evidence that the acts of the Examiner were proper and "that the proofs had been regularly made and were satisfactory. No other tribunal is at liberty to re-examine or controvert the sufficiency of such proof" since the law has made the Examiner "the proper judge of their sufficiency and competency." Philadelphia & Trenton R. Co. v. Stimpson, 14 Pet. 448, 39 U.S. 448, 458, 10 L.Ed. 535. From the reported opinion, it appears that the contention made in the Stimpson case was identical to the argument here advanced. Thus, the defendant in that case argued that a renewed patent was invalid because it contained no recitals that the requisite proofs required by the law had been presented to the issuing officer. In disposing of that argument, the Court held that it would assume that the administrative officer who was vested by law with the authority to issue patents had acted in accordance with law and had properly exercised the duties of his office. The Court held further that that presumption was unassailable, absent positive evidence of fraud or misfeasance.

To the same effect as the Stimpson case is Wayne Mfg. Co. v. Coffield Motor Washer Co., 8 Cir., 227 F. 987, 991, wherein it is said that all questions of fact behind the issuance of a patent are to be "examined, heard and determined" by the patent office alone. See also, Helms Products v. Lake Shore Mfg. Co., 7 Cir., 227 F.2d 677, 679.

Here the file wrapper of the original England patent reveals that the Examiner, after his initial rejection of plaintiff's application, on the strength of amendments to the application and of interviews with counsel, determined that plaintiff's claimed invention was patentable over the prior art references upon which his initial rejection of the application had been based. The file wrapper of the reissue patent in suit reveals that the Examiner determined that the statutory conditions for reissue had been met in plaintiff's reissue application and that the patent should issue over consideration of the prior art references.

Those determinations by the Examiner are now unassailable, and the fruits thereof come before this court clothed with a presumption of validity of the patent which may be overcome only by clear and convincing proof "that the disclosure [of the patent] amounts to nothing more than mechanical skill, in view of the prior art cited * * *." Murdock v. Vaughan Novelty Mfg. Co., 7 Cir., 131 F.2d 258, 259; Oliver United Filters, Inc., v. Silver, 10 Cir., 206 F.2d 658, 664, certiorari denied 346 U.S. 923, 74 S.Ct. 308, 98 L.Ed. 416. Defendant's contention is rejected.

### Summary of Facts and Evidence

The patented device involved is one element of the tying mechanism for twine-tie hay balers. The basic components of the tying mechanism are interrelated entraining disks which are notched along their periphery to receive and engage a strand of twine, a holder to engage the twine within the entraining disks, a knotting device which fashions a knot in the twine in proper sequence in the cycle of operation, a knife which cuts the twine to disengage the bundle or bale from the mechanism for deposit in the field and a motive means which activates the whole interrelated mechanism. That basic mechanism has been in use with little change from the advent of the grain reaper-binder. Subsequent usage has seen the device adapted for use on twine-tie corn binders and, most recently, on twine-tie hay balers.

What might be called the basic design for the twine holder element of the mechanism was a single, pivotally-mounted member which engaged the twine between dual entraining disks, and there held it fast until the tying sequence was completed. A later refinement of that element is exemplified by the webbed-back, triple-spur holder based upon the teachings of the Hornsby patent. A more recent refinement, which preceded plaintiff's claim of invention, is a dual-member, open-back holder adopted by both International Harvester Company and New Holland Company.

For use on grain and corn binders, both the single member and the rigid-backed, multi-spur holders appear to have worked satisfactorily. In such operations the basic need was a holder adequate to keep the twine engaged between the entraining disks while a bundle of grain or corn of uniform size was cut and formed for tying. The need for a new innovation in the holding mechanism arose when the tying mechanism was adapted for use on twine-tie balers, which were introduced to the market in the early 1940's.

At the latter time, International Harvester developed a twine-tie baler and adapted the grain-binder tying mechanism for use thereon. Its first commercial unit, designated as the Model 50–T Baler, was equipped with a two-member, open-back twine holder. One member of that holder engaged the twine between dual entraining disks, while the second member engaged the twine on the outer surface of one disk. That holder was only a partial success.

In hay baling, the holding mechanism is subjected to greater and different stresses than was the case with either the grain or corn binder. In the baling operation the twine must be engaged and held within the entraining disks while a bale of desired size and weight is formed by compression of the hay against the encircling bands of twine in the bale chamber of the baler. The stresses vary

with variable factors encountered in the field. Green hay or damp hay, when encountered, causes a considerable amount of increase in the stresses which the holder must bear, and under such adverse conditions the knotting mechanism employing the two-member holder failed and many untied bales were the result. The evidence discloses that those untied bales resulted from both the slippage of the twine from the disks and from twine breakage under adverse conditions.

Plaintiff's principal occupation is that of farming. In 1947 plaintiff purchased an International 50–T baler which he used for both his own and custom baling. In subsequent years he owned two other balers of the same model. With each he experienced difficulty with the performance of the standard two-member holder. He discovered that under circumstances where heavy bales were desired, or when green or damp hay was encountered, there was a high percentage of failure of the machine's tying mechanism. He tried various methods of adjustment of the standard two-member equipment without lessening the loose-bale difficulty. Other witnesses substantiate plaintiff's testimony as to the partial failure of that device.

In August, 1950, after a particularly bad day during which plaintiff encountered a large number of untied bales, plaintiff conceived the idea of trying a three-finger holder in place of the standard equipment on his baler. He spent that night welding together a pair of holders embodying the three-finger concept and installing the same on his baler. In baling operations on the following day, plaintiff encountered no untied bales after the first bale of the day. He continued to use the three-finger holder experimentally on his own baler and on a friend's baler during the remainder of the 1950 baling season. That use continued to be successful.

On October 15, 1951 plaintiff filed his application for a patent on the three-finger holder, asserting four claims of invention. That application, made special, was first denied by the Examiner as not constituting invention over the Hornsby patent. Other references cited by the Examiner as showing the state of the art were Remy, No. 314,056, British, No. 410, to Wilkinson, and British No. 497,474, to Lantz. Upon reconsideration of an amended application, the Examiner, applying the same references, reversed himself and issued Patent No. 2,594,140 to plaintiff on April 22, 1952.

After he received his patent, plaintiff began commercial production of the three-finger holder. It is not disputed that the device met with immediate public acceptance. More than 12,000 pairs of the device were sold to the public over a period of a few years to replace the factory-equipment, holder device on various balers.

Prior to 1954 defendant did not market a twine-tie baler. Its commercial grain and corn binders were equipped with a single-member twine holder employed in conjunction with dual entraining disks. About 1951, it began experimenting in the twine-tie baler field. An experimental machine was built and taken to defendant's Ottumwa Works for final development in 1952. The tying mechanism of that machine was a revised corn binder tying head, employing a single-member twine holder, and was so constructed that "two-finger holders could be put on it." Experiments with both the single-blade and the two-blade holder were conducted at Ottumwa on the machine. In early 1953, Mr. McClellan of the Ottumwa Works learned of plaintiff's triple-blade holder and requested defendant's patent department to determine what the patent situation was with respect thereto. Defendant's patent counsel reviewed the situation and advised defendant that the England patent was invalid. On June 9, 1953 defendant issued a purchase order for three sets of plaintiff's holders for delivery not later than June 12th for experimental use with defendant's balers. Plaintiff delivered the order to Ottumwa in person and, while there, attended a field trial

of defendant's experimental baler which was equipped with triple-finger holders.

Defendant's twine-tie baler was placed on the market about June 1, 1954. It was equipped with triple-finger twine holders. At about the same time, plaintiff advised defendant that the use of such holders was an infringement of his patent. On June 2, 1954 defendant replied to that charge by asserting that the claims of plaintiff's patent were anticipated by Cooley Patents No. 345,674 and No. 352,081 and were, therefore invalid. The series of contacts between plaintiff and defendant culminated with a letter from defendant's patent attorney, dated July 2, 1954, in which it was suggested that the omission by plaintiff of the back or web disclosed by the Cooley patents "does not constitute invention." That letter continued, in part, as follows:

"Our grain binder twine holder for many years has consisted of one finger substantially identical with one of the three fingers we now use. Our only change has been to stack up three fingers instead of one, using spacers between the fingers. Whether the spacers are at one end of the stack or along one edge of the stack as in Remy 314,056, is a matter of choice, in our opinion, inasmuch as there is no difference in operation or in results accomplished.

"On the other hand, if, as you contend, there is invention in stacking the three fingers together and locating the spacers and fasteners at one end instead of along the edge, the claims [of plaintiff's patent] do not point this out  *  *  *."

Further contact between the plaintiff and defendant was then discontinued until March, 1955. Plaintiff, in the meantime, filed an application on September 23, 1954 for reissue of his patent. As a part of that application, the specifications of the original patent were amended by the addition of the following language: "As seen in Figures 1, 3 and 4, all of the longitudinal edges of said fingers are spaced from each other to provide completely open spaces between the fingers." Six new claims, numbered 7 to 12, inclusive, were added by the application in addition to the six claims of the original patent, all of which were retained. That application, also, cited the Cooley patents as additional references showing the state of the art.

In his affidavit in support of the reissue application, plaintiff stated that, as a result of inadvertence and mistake, the specifications of his original patent failed to state, "as shown by the drawings, that all of the plate-like fingers are completely separated from each other along their longitudinal edges to provide open spaces between the fingers, or the foregoing structure whereby the central finger may move freely between the disks of the tying machine", and that he failed to present claims specifically directed to the embodiment of the above structural feature. Plaintiff stated, further, that he was unaware that his patent did not contain claims directed to the specific structural features of his device until a conference was had with his attorneys on August 23, 1954, and that new claims 7 to 12 of the application were designed to correct that deficiency.

On January 18, 1955 the reissue patent in suit was issued, embodying all of the original claims of the original patent, with only minor typographical amendments, and the six new claims.

On June 9, 1955, plaintiff, by attorney, gave formal notice to defendant to cease and desist the use of twine holders embodying plaintiff's invention as disclosed by his patent. Defendant took the position that the open-face, spaced relationship of the three fingers did not constitute invention, in view of the prior use by International Harvester and New Holland of two-finger holders bearing like spaced relationship. Further correspondence led to no change of position, and the present suit was filed November, 28, 1956.

### Addition of New Matter

■ One of defendant's principal contentions against validity of the reissue patent is that the claims added thereby are based upon new matter in violation of 35 U.S.C. § 251. That contention is based upon the addition to the specifications of the language previously quoted that "all the longitudinal edges of said fingers are spaced from each other to provide completely open spaces between the fingers."

Defendant's contention that the above is prohibited new matter is rebutted by the decision in Weller Mfg. Co. v. Wen Products, Inc., 7 Cir., 231 F.2d 795. In rejecting a like contention against the validity of a reissue patent, the court said at pages 799–800:

"Defendants contend that the reissue patent is invalid because of added new matter. The statute provides, 35 U.S.C. § 251: 'No new matter shall be introduced into the application for reissue', and defendants argue that new matter was added, both to the specifications and the claims of the reissue patent. Obviously, a patentee is not forbidden to add as new material in a reissue patent a description of the inherent function and mode of operation disclosed in the original patent. Thus, in Giant Powder Co. v. California Powder Work, 98 U.S. 126, at pages 136–137, 25 L.Ed. 77, the Supreme Court said: ' "If the last patent differs from the first only in stating more clearly and definitely the real principles of the invention, so that those who wish to pirate it may not be allowed to escape with impunity through the imperfection of the language used in the first, there has arisen one of the cases for which it was the intention of the act of Congress to provide, and the objection is worthless in point of law." ' See also Eames v. Andrews, 122 U.S. 40, 7 S.Ct. 1073, 30 L.Ed. 1064. This principle we followed in Hazeltine Research, Inc., v. Avco Mfg. Co., 7 Cir., 227 F.2d 137, certiorari denied [350 U.S. 987,] 76 S.Ct. 474, [100 L.Ed. 854]. Furthermore, we are of the opinion that an applicant for reissue may fully describe his original invention and include in his new description and claims not only what was described before, but also what was suggested or implied in the original drawings  *  *  *."

What plaintiff has done here falls within the teachings of the Weller case. The drawings of plaintiff's original patent disclose that the three fingers of his twine holder device are spaced apart each from the other along their longitudinal edges, but that spacing was neither specifically described in the specifications, nor stated in the claims thereof. The narrower claims allowed in the reissue patent are based principally upon this feature of spacing. The new matter which plaintiff added to his reissue application is clearly within both the letter and the spirit of the reissue statute, which provides for reissue whenever any patent, through inadvertence, without deceptive intent, is deemed by the patentee wholly or partially inoperative by reason of a defective specification or by reason of the patentee claiming more or less than he had a right to claim.

■ The further contention that the reissue patent must be declared invalid because all of the original claims are retained therein must be rejected. If a reissue patent must be stricken down on that basis, alone, the reissue statute may well be impliedly repealed insofar as it provides for the correction of a patentee's having claimed less in his original application than he was entitled to claim.

### Patentable Invention

■ Defendant contends that plaintiff's device does not constitute invention over the prior art and is anticipated by the prior usage by International Har-

vester and New Holland of the two-member, open-back holder.[1]

The question whether what plaintiff has done constitutes invention is a close one and is not entirely free from doubt. The single-member holder, employed in conjunction with step by step entraining disks, is as old as the reaper-binder industry itself. Subsequent refinements of that basic member, made prior to plaintiff's entry into the art, progressed through the webbed-back design revealed in Hornsby and culminated in the use of the two-member holder which was used by International Harvester and New Holland. In one sense, plaintiff merely added a third member to the existing device which was in use by International Harvester and New Holland, an accomplishment which defendant contends is merely the work of a skilled mechanic.

In retrospect, plaintiff's accomplishment may seem to be nothing more than the work of a mechanic skilled in the art. At the same time, it is not disputed that plaintiff has done something that other contemporaries had failed to discover and that he resolved a problem that had faced the twine-tie baler industry from its inception. The Harvester two-member holder, the device which most closely anticipates plaintiff's claimed invention, was unsuccessful in heavy application.

With the Harvester device, baling was accomplished in heavy application at the expense of a large percentage of loose, untied bales. There is no dispute in the evidence that the three-finger holder designed by plaintiff successfully resolved that difficulty. Thus, the case presents a paradoxical situation in which the very simplicity of what plaintiff has done tends to argue against a finding of invention in the discovery of his holder, while, at the same time, the simple change which he made in existing devices converted substantial failure of the twine-tie baler into success.

Under those circumstances, I am convinced that this is a case wherein a court should recognize the achievement of what plaintiff has done and should not deny patentability to the step which he has taken, simple though it may be, which created success out of substantial failure.

This case is not unlike the situation involved in The Barbed Wire Patent, 143 U.S. 275, 12 S.Ct. 443, 36 L.Ed. 154. In that case the prior art was extensive. The Glidden patent, in suit, was preceded by a number of patents for barbed wire using various types of wood and metal barbs affixed to a strand of wire in the attempt to achieve a stock-resistant fence. The principal steps forward

---

1. All of the claims of plaintiff's Reissue Patent No. 23,927, except claims 3, 5, and 6, are in issue in this suit.

Claim 2 of the patent in this suit is representative of the claims retained from plaintiff's original Patent No. 2,594,140 and reads as follows:

"2. In a tying machine having a pair of spaced apart twine entraining disks, said disks having peripheral twine receiving notches, a twine holder comprising an arm pivotally mounted adjacent the periphery of said disks, a central finger on said arm, said central finger extending between said disks, a pair of fingers rigidly secured in spaced parallel relation to said central finger, said pair of fingers engaging the outer sides of said twine entraining disks, the face of each of said fingers having an arcuate twine engaging surface or edge portion."

Claim 7 is representative of the six new claims added to the patent in suit and reads as follows:

"7. In a twine tying machine having a pair of spaced apart twine entraining rotary disks, said disks having peripheral twine receiving notches; the combination with said machine of a twine holder comprising an arm, arm pivot means pivotally mounting said arm on said machine adjacent the peripheries of said disks, a central plate-like finger extending between said disks, a pair of plate-like fingers, means rigidly securing one end only of each of the fingers of said pair of fingers to said arm with one finger of said pair of fingers on each side of said central finger, the said fingers being completely separated from each other along all of their longitudinal edges and providing open spaces between said fingers whereby the said central finger may freely move between said disks during movements of said arm about said pivot means."

which Glidden took were to teach that the barbs should be constructed of wire and be held in place by twisting two strands of wire together. Because there is substantial analogy between the instant case and The Barbed Wire Patent, quotation at some length from the Court's opinion in the latter is justified, as follows:

"It is true that the affixing of barbs to a fence-wire does not apparently give a wide scope to the ingenuity of the inventor; but from the crude device of Hunt to the perfected wire of Glidden, each patent has marked a step in the progress in the art. The difference between the Kelly fence and the Glidden fence is not a radical one, but, slight as it may seem to be, it was apparently this which made the barbed-wire fence a practical and commercial success. * * *.

"Under such circumstances courts have not been reluctant to sustain a patent to the man who has taken the final step which has turned a failure into a success. In the law of patents it is the last step that wins. It may be strange that, considering the important results obtained by Kelly in his patent, it did not occur to him to substitute a coiled wire in place of the diamond-shaped prong, but evidently it did not; and to the man to whom it did ought not to be denied the quality of the inventor. There are many instances in the reported decisions of this court where a monopoly has been sustained in favor of the last of a series of inventors, all of whom were groping to obtain a certain result, which only the last one of the number seemed able to grasp. [Quoting from Loom Company v. Higgins, 105 U.S. 580, 591 [26 L.Ed. 1177], the Court continued]: ' * * * Now that [the patented device] has succeeded, it may seem very plain to anyone that he could have done it as well. This is often the case with inventions of the greatest merit. It

may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result, never obtained before, it is evidence of invention.' " 143 U.S. at pages 282–283, 12 S.Ct. at pages 446, 447.

The principle announced in the Barbed Wire cases finds application in a number of recent decisions by the Courts of Appeal. In Weller Mfg. Co. v. Wen Products, Inc., 7 Cir., 231 F.2d 795, the patentee claimed invention in the use of a low-resistance material, such as copper, in the soldering tip of a soldering gun in place of high-resistance materials which had theretofore been used. In holding the patent valid, the court said at page 798: "We need not elaborate upon the rule that a novel combination of old elements which so cooperate with each other so as to produce a new and useful result or a substantial increase in efficiency is patentable. See Lewyt Corp. v. Health-Mor, Inc., 7 Cir., 181 F.2d 855, certiorari denied 340 U.S. 823, 71 S.Ct. 57, 95 L.Ed. 605; Blaw-Knox Co. v. I. D. Lain Co., 7 Cir., 230 F.2d 373."

The patent involved in Blaw-Knox Co. v. I. D. Lain Co., 7 Cir., 230 F.2d 373, claimed invention in a new arrangement of known elements of concrete-paving, finishing machines. In highway construction, it had been found to be desirable to use heavy, viscous concrete for paving. The standard method of machine finishing left a large number of bubbles of trapped air in the viscous material, which led to rapid deterioration of the pavement under use. The patentee combined the known elements of such machinery into a single machine, with such elements so arranged in relationship to each other, that the new machine achieved a large success in removing such trapped air from the viscous material. Though every element of the combination was old in the art and though the patentee's arrangement differed only slightly from prior usages of the several elements the court held the patent valid. In so holding, the court

reasoned that the patentee's achievement of success where others had failed turned the scales in favor of patentability, despite the suggestion from the simplicity of what the patentee had done that he had achieved nothing more than the work of a skilled mechanic in rearranging the relationship, each to the others, of the known elements which comprised his machine.

In Ray-O-Vac Co. v. Goodyear Tire & Rubber Co., 7 Cir., 136 F.2d 159, affirmed 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721, the court upheld a patent which claimed invention in the placing of a shield at the bottom of a dry cell to give it leak-resistant quality. The art with relation to dry cells was very crowded. There were a large number of patents in the field, and it appears from the trial record that the patentee himself had been issued a subsequent patent which was designed as an improvement of the patent in suit. In holding the patent valid, the court said, in part: "The acceptance of a new article of commerce is experience which may well outweigh any conclusion of the court or any syllogism which concludes,—there is nothing to that dry cell which any mechanic did not foresee. The public appraisal of a new article's worth, evidenced by its prompt acceptance, outweighs, in some cases, a volume of opinion evidence" that any person skilled in the art could have done as well. 136 F.2d at page 160.

Florence-Mayo Nuway Co. v. Hardy, 4 Cir., 168 F.2d 778, involved a claim of invention in a refinement over a substantial field of prior art relating to barns for the fire curing of tobacco. The prior art included the combination of a barn, with tiers for hanging the tobacco, vents for air intake at the bottom of the barn, ventilators for the escape of heated air which were located in the roof of the barn, a hood-covered burner for burning wood or coal and flues distended upward from the burner to carry off the hot gases, which were so arranged that they would heat the air in the barn for the curing process. The patentee's claimed invention included a combination of the barn, the tiers, the burner, the hood and the basic air intake and ventilator arrangement. Instead of using wood or coal, the patent directed that an open flame oil burner be installed under the hood, and incorporated the teaching that duct-work be installed in the air intakes in such fashion that the outside air would be directed underneath the hood to mingle with the flames for heating, after which it should be permitted to radiate out from under the hood and rise up among the hanging tobacco to achieve the curing process. In concluding that the idea involved patentable invention, the court said:

"The combination of Mayo, then, was new and useful and not anticipated in the prior art. We think it unquestionably involved patentable invention and not the application of mere mechanical skill. It is easy to say now that what Mayo did was simple and obvious; but nobody seems to have thought of doing what he did until he did it. Knowledge after the event is always easy, and problems once solved appear as never having presented difficulty. We must try, * * *, to avoid the danger which Judge Evans has recently pointed out in thinking there is no invention merely because we can understand a mechanism after it has been explained to us. National Slug Rejectors v. A. B. T. Mfg. Co., 7 Cir., 164 F.2d 333, 336." 168 F.2d at page 781.

Williams Mfg. Co. v. United Shoe Machine Corp., 6 Cir., 121 F.2d 273, affirmed 316 U.S. 364, 62 S.Ct. 1179, 86 L.Ed. 1537, involved the question of validity of a patent for an automatic shoe-lasting machine. The machine described in the patent consisted of a combination of elements, all of which were old in the art, which were so arranged as to achieve a long-recognized need in the shoe manufacturing industry. The court held, under those circumstances, that patentee's arrangement of those old elements in a new way so as to accomplish a needed result constituted more than the work of

a skilled mechanic and more than a mere improvement in quality or quantity of the manufactured product.

■ The summarized cases suggest the resolution of the question whether plaintiff has achieved the dignity of invention in his twine holder. The advance which he made in the art, although a slight one, is the step which converted the twine-tie baler from substantial failure to successful operation. A patent covering the device was issued to him by the Examiner over the teachings of the most pertinent prior art references, and over the prior usage by International Harvester and New Holland which were cited to the Examiner. The presumption of validity which attaches to the grant of the patent is strengthened by the commercial success of plaintiff's device. See Artmoore Co. v. Dayless Mfg. Co., Inc., 7 Cir., 208 F.2d 1, certiorari denied 347 U.S. 920, 74 S.Ct. 518, 98 L. Ed. 1075; Ray-O-Vac Co. v. Goodyear Tire & Rubber Co., 7 Cir., 136 F.2d 159, affirmed 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721; Delta Mfg. Co. v. Essley Machinery Co., 7 Cir., 153 F.2d 905, 907, certiorari denied 328 U.S. 867, 66 S.Ct. 1376, 90 L.Ed. 1637. In the few years of his operation, plaintiff has marketed some 14,000 of his twine holders to replace factory equipment on various types of twine-tie balers. The evidence does not disclose the number of such balers in use at the time this suit was filed, but some indication of the number of such balers is found in the fact that International Harvester, a leader in the field, had manufactured only some 25,000 twine-tie balers in more than 10 years of operation.

It is also pertinent that defendant, in designing and testing its baler, finally imitated plaintiff's successful device as equipment on its commercial model balers. Defendant tested both the single-member holder and a two-member holder which was patterned after those in use by Harvester and New Holland and rejected both in favor of what is a Chinese copy of plaintiff's holder. Such imitation adds strength to the presumption

of validity in a close case such as this. Hazeltine Research, Inc. v. Admiral Corp., D.C., 87 F.Supp. 72, 79, affirmed 7 Cir., 183 F.2d 953, certiorari denied 340 U.S. 896, 71 S.Ct. 239, 95 L.Ed. 650; Kurtz v. Belle Hat Lining Co., 2 Cir., 280 F. 277, 281; To same effect, Florence-Mayo Nuway Co. v. Hardy, 4 Cir., 168 F.2d 778.

I resolve the issues in favor of patentability of plaintiff's device and hold all claims in issue to be valid.

### Infringement

Defendant contends, though not seriously, that its device does not infringe plaintiff's patent. I think that there can be no dispute that defendant's holder does infringe the patent.

Plaintiff's device consists of an arm which is drilled at one end for pivotal mounting on a twine-tie knotting head, which arm extends forward from its pivotal mount as the central finger of the device. On either side of this central finger, an additional finger is secured at one end only and in spaced relationship along its longitudinal edges to the central finger. Spacing between the fingers is achieved in plaintiff's device by shaping each of the outer fingers with an outwardly-distending shoulder positioned immediately forward of the point of the securing means.

Defendant's holder is a Chinese copy of plaintiff's device, the principal distinction between the two being that spacing between the fingers of defendant's device is achieved by incorporating spacers between the several fingers at the point of the securing means. Beyond all peradventure, the device does infringe.

### Intervening Rights

■ Defendant's contention that it has acquired intervening rights by its adoption and use of its three-finger holder prior to the issuance of the reissue patent in suit is rejected. The claims of plaintiff's original patent, which are retained in the patent in suit, are valid and infringed as above found. In view of that finding, no intervening rights

could accrue to defendant in the premises. Weller Mfg. Co. v. Wen Products, Inc., 7 Cir., 231 F.2d 795, 799.

### Judgment

The findings of fact and conclusions of law of the court are included in the foregoing opinion.

Judgment is ordered in favor of plaintiff against defendant for injunctive relief and an accounting. Plaintiff's counsel are directed to prepare a judgment order in accordance with the above memorandum, together with an injunction restraining further infringement of the patent in suit. The same shall be submitted to defendant's counsel for their approval as to form and submitted to the court for approval within 20 days hereof.

Defendant's counterclaim is dismissed.